**SUPERIOR INCINERATOR CO. v. TOMP-KINS et al.**

**No. 1391—5998.**

Commission of Appeals of Texas, Section B.

April 19, 1933.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for plaintiff in error.

J. J. Collins, A. A. Long, W. Hughes Knight, and H. P. Kucera, all of Dallas, for defendants in error.

LEDDY, Judge.

The board of commissioners of the city of Dallas advertised for proposals for the construction of an incinerator plant. Relator was the lowest bidder for said work. His bid was duly accepted and he was awarded the contract for this improvement on April 15, 1929. By proper resolution adopted by said commissioners, the mayor pro tem. was directed to and did sign said contract for and on behalf of the city.

On May 1, 1929, after a change of administrations, the new board of commissioners conducted an investigation as to the advisability of building this incinerator plant. After such hearing, on June 5, 1929, the board by a resolution determined that there was no need for the construction of such plant and ordered rescinded all of the orders upon which the contract with relator was predicated.

The city auditor, acting under direction of the city officials, refused to countersign the contract for this improvement. Thereupon relator instituted this proceeding in the district court against the auditor, in which it sought the issuance of a writ of mandamus to compel him to countersign said contract.

The relief prayed for was denied by the trial court and its judgment was affirmed by the Court of Civil Appeals. This writ of error has been granted to determine whether relator is entitled to issuance of the writ prayed for.

The only provision of the city charter as to the duties of the city auditor with reference to contracts of this nature are those contained in article XIV, section 42, which reads as follows: "No contract shall be entered into by the Board of Commissioners until after an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts shall be made upon specifications and no contract shall be binding upon the city unless it has been signed by the Mayor and countersigned by the Auditor, and the expense thereof charged to the proper appropriation; and whenever the contract charged to any appropriation equals the amount of said appropriation, no further contracts shall be countersigned by the Auditor."

█ After the contract in question had been awarded, the city could not lawfully rescind the same without the consent of the contractor. A contract is just as binding upon a municipal corporation as upon an individual. To determine that such a corporation may annul the obligation of its contract made with an individual would be to allow it a greater power than is possessed by the state which created it. "The right and liability of a city in letting contracts for public improvements," says the court in Bailey v. Mayor, etc., of City of New York, 3 Hill (N. Y.) 531, 38 Am. Dec. 669, "are to be measured and determined by the same rules as govern individuals or private corporations. It cannot claim exemption or immunity from liability arising out of its contracts on account of its municipal capacity."

██ While the city could not lawfully rescind the contract made by its award of this construction work to relator without his consent, it unquestionably had the power to abandon the proposed improvement. This abandonment, however, subjects it to liability for such damages as relator may sustain, provided he is able to establish that his contract has been made in conformity to the provisions of the city's charter and ordinances governing the execution of such contracts. The action of the board of city commissioners in annulling all orders awarding the contract clearly constituted an abandonment of the improvement covered thereby.

It is a well-settled doctrine that a city has the power to abandon a proposed public improvement, even though in doing so it may breach a contract it has made therefor. In discussing this power the Supreme Court of Washington, in the case of Broad v. City of Spokane, 59 Wash. 268, 109 P. 1014, 1015, used this language: "That the city had power to abandon these proceedings at the time it did abandon them, we think there can be no question, even though such abandonment resulted in a breach of contract with the appellant. The power is deducible from the general powers of the city; in fact, from the power to proceed with the work. If this were not so, there could be no relief from improvident undertakings. The city could not, under the appellant's view, abandon the work of constructing this sewer on the return of the assessment roll, even though it then discovered that the sewer would not when completed perform its functions and must be immediately destroyed. We cannot think that the city is thus helpless."

█ Relator seems to entertain the view that no action for damages against the city could be maintained by it unless the city auditor has countersigned the contract between him and the city. When the city, through proper resolution of its governing body, declared its purpose to abandon the proposed improvement, the contract existing between relator and the city was breached. If relator is in position to establish the regularity of the proceedings upon which his contract is predicated, he has a right of action against the city for whatever damages he has sustained on account of the refusal of the city to perform the contract.

The question here involved is analogous to that presented under a contract where a tender of performance is essential to a plaintiff's right of action. It is uniformly held that such tender is unnecessary where the opposing party has previously announced his complete repudiation of the contract. Matthews v. Caldwell (Tex. Com. App.) 258 S. W. 810; Norton v. White (Tex. Civ. App.) 16 S. W.(2d) 553; Young v. Watson (Tex. Civ. App.) 140 S. W. 840.

In the case of People ex rel. Lunney v. Campbell, 72 N. Y. 496, a mandamus to compel the commissioner of public works to enter into a contract with him for certain grading, etc., was denied. It appeared that relator was the lowest bidder for the contract and that his bid had been accepted and the contract awarded to him. The court held, how-

ever, that the announced refusal of the commissioner to carry out the contract constituted a breach, for which an action for damages would lie, and that in such a case the remedy of mandamus was not available to compel the commissioner to execute the contract. In passing upon this question the court said: " * * * and there appears to be no question that if the proceedings were all regular and conducted according to law as is asserted, and the relator has in all respects conformed to the provisions of the city charter, that he has a right of action against the city for all damages which he has sustained, by reason of the refusal of the commissioner to execute and carry out the contract. No rule is better settled by the decision of the courts than that in such a case mandamus will not lie."

A similar ruling was made in the case of People ex rel. Ryan v. Aldridge, Mayor, 83 Hun, 279, 31 N. Y. S. 920. The record in that case disclosed that the common council for the city of Rochester directed a committee to advertise for proposals for certain work and to let it to the lowest bidder, and directed the mayor to execute the contract. After relator's proposal had been accepted, the council reconsidered its action and indefinitely postponed the matter. The court held that mandamus to compel the mayor to execute the contract did not lie, but that relator's remedy was by an action against the city for damages. The court very clearly points out the reason the remedy of mandamus could not be resorted to under such circumstances. The court said: "It is very clear, we think, that the action cannot be maintained. The writ of mandamus to a public officer to compel the performance of a duty which rests in contract, merely, is in the nature of an action in equity for a specific performance of such contract, and specific performance cannot be compelled of a contract of the nature of that here in question. No person can be compelled, by any process of law, to prosecute any enterprise, undertaken for purposes of his own, beyond the point at which he sees fit to discontinue the undertaking; and if he has contracted with another person to do the work for him, and afterwards refuses to have it done, the contractee does not relieve himself from the obligation of the contract, but the remedy of the contractor is confined to his action of damages for its breach. The contract is not abrogated, but, in the nature of things, neither party can compel its specific performance by the other. The rule applies as well to bodies corporate and politic as to individuals, and even to the state, although against it no action for damages can be directly maintained."

A similar doctrine was announced in the case of Lord v. Thomas, 64 N. Y. 107, in which the court said: "The State cannot be compelled to proceed with the erection of a pub-

lic building, or the prosecution of a public work at the instance of a contractor with whom the State has entered into a contract for the erection of a building or the performance of the work. The State stands, in this respect, in the same position as an individual, and may at any time abandon an enterprise which it has undertaken, and refuse to allow the contractor to proceed. * * * That a person who has employed another to perform labor may refuse to allow the other party to proceed, and that the latter cannot thereafter insist upon specifically performing the contract, was decided in Clark v. Marsiglia (1 Denio, 317, [43 Am. Dec. 670])."

■■ It is clear under all the authorities that the contract in question is one that cannot be enforced by specific performance. The city had the power to abandon the undertaking at any stage of the proceedings, even though the contractor had partially performed the contract. It is true that relator does not seek by this proceeding to compel the specific performance of the contract. Its action, however, is one to compel the performance of the execution of the contract. Inasmuch as the city has the power to abandon the undertaking with relator, and has seen fit to exercise such power, no right to enforce the execution of the contract exists. In the case of People ex rel. Ryan v. Aldridge, supra, a similar situation was presented. It was there determined that such performance could not be compelled by mandamus, and in so declaring the court made this observation: "We think that the principles thus stated are applicable to the case in hand, notwithstanding that the duty here sought to be enforced by mandamus *is the execution, and not the performance, of the contract for the survey.* * * * We have, then, the action of the committee in awarding the contract to the relator, binding upon the city because taken under the direction of its common council; but no further action on the part of the committee, enforceable by mandamus, because that direction has been revoked. The remedy of the relator, therefore, if any exists, is, as in the cases cited, by action for damages for breach of the contract actually made, and not to compel the execution of a further contract which the city, by its common council, has decided not to enter into. We think the discretion of the court was properly exercised at special term in the denial of the motion for a mandamus, and that the order should be affirmed."

The charter provision requiring contracts of this nature to be countersigned by the auditor was designed to prevent the city entering into contracts for public improvements when sufficient funds were not available to pay the cost thereof. Since the city has declared its purpose to expend no funds whatever on the enterprise, the countersigning of this contract by the auditor could serve no

useful purpose and would be but an idle ceremony.

The conclusion reached compels the recommendation that the judgment of the Court of Civil Appeals be affirmed, and it is so ordered.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.