CITY OF BRECKENRIDGE

v.

STOKER et ux.

No. 3054.

Court of Civil Appeals of Texas. Eastland.

Jan. 22, 1954.

Rehearing Denied Feb. 12, 1954.

Hawkins & Dean, Breckenridge, for appellant.

L. H. Welch, Breckenridge, for appellees.

GRISSOM, Chief Justice.

Roy Stoker and wife sought a writ of mandamus requiring the City of Breckenridge to perform a contract to extend its water and sewer mains to Stoker's houses and to recover damages. The court, on its own motion, instructed a verdict for the Stokers requiring extension of the sewer main but as to all other matters withdrew the case from the jury and rendered judgment requiring extension of the sewer lines but denying the Stokers all other relief. All parties have appealed.

The City contends that the part of the judgment requiring extension of its sewer line should be reversed because (1) Stoker's houses were not moved to land "adjacent" to the right of way and, therefore, the City, under its second resolution, (first on March 19th), was under no duty to extend its sewer line to Stoker's houses; (2) the question whether its sewer line should be extended involved a governmental function and exercise of discretion by the City Commission which cannot be controlled by man-

damus; and because, (3) assuming the contract was valid, the City had the right to abandon the project; (4) because extension of the sewer line would be useless without extension of a water line, which had been denied, and the court should not compel the City to do a useless thing, and (5) because the City being the sole defendant, there was no one against whom the writ could be enforced.

The Stokers contend that the parts of the judgment denying a mandamus requiring extension of a water main and damages should be reversed. The Stokers owned land and houses on the route on which Highway 6 was to be established down a to be widened Breckenridge Avenue through Breckenridge. The City, in order to obtain land for the relocation of said highway, filed a condemnation suit against the Stokers. A compromise resulted in making contracts which are the basis of this suit. Said contracts, as disclosed by the City's resolutions, with the recitations of the State, County and City in the beginning, the names of commissioners, the signatures of the Mayor and Secretary at the conclusion and some immaterial provisions deleted, were as follows:

"On this the 18th day of March, A. D., 1952, the City Commission of the City of Breckenridge met in regular session in the regular meeting place of the City Hall at 2: P. M. with the following members present to-wit: * * *

"The following business came on for consideration:

"In agreement with Mr. Roy Stoker's offer, motion was made by Mr. Bingham and seconded by Mr. Tolle that $5,600.00 for a settlement of land for the right of way for relocation of Highway #6. Mr. Stoker stated that he would like to have the water and sewer lines run along this property to the edge of the city limits. The Commission explained to Mr. Stoker that the City could not run these lines unless there were houses which needed the services. The Commission agreed to provide these services to the houses as they are moved in or built in this vicinity.

"The following resolutions were passed:

"Resolution

"Whereas, the land hereinafter described is an abandoned part of an alley and a street * * * and so may be deeded under the provisions of Article 1017 [Vernon's Ann.Civ.St.] * * * and Roy Stoker * * * has offered to buy same to be considered as a part of the damages for relocating Highway No. 6 and it appearing to the Commission that neither of the following have ever been used by the public and it is further knowledge of the Commission that Roy Stoker owns all adjoining lands to the tracts of land, now, therefore, be it resolved by the Board of Commissioners of the City of Breckenridge:

"That the Mayor of said City be, and he is hereby authorized to deed unto said Roy Stoker, by special warranty deed, the following described land in the City of Breckenridge * * *:

"The alley extending for a distance of 208.5 feet in a Northerly direction from the North boundary line of Bender Street, bounded * * *.

"The Street 60 feet North and South by 130 feet East and West, lying * * *.

"Passed in session, at Breckenridge, Texas, on this 18th day of March, 1952.

"Be It Resolved by the Board of Commissioners of the City of Breckenridge that the Mayor of said City be, and he is hereby, authorized and directed to effect a settlement and compromise of all issues which are involved in Cause 2945, the City of Breckenridge vs. Roy Stoker, et ux, now pending in the County Court of Stephens County, Texas, on the following terms, to-wit:

"1. Said City will cause the dismissal of said Cause No. 2945 at the cost of the City of Breckenridge.

"2. Said City will convey by special warranty deed or deeds to Roy Stoker the following three tracts of land situated in the City of Breckenridge, * * * the first two of said tracts being an abandoned street or alley, authority to convey which is vested in said City · * * *:

"First Tract

"The alley extending for a distance of 208.5 feet in a Northerly direction from the North Boundary line of Bender Street, bounded * * *.

"Second Tract

"The street 60 feet North and South by 130 feet East and West, lying * * *.

"Third Tract

"A part of Lot 3 and part of the south ½ of Lot 2, Block 4, of Walker South Side Addition * * *.

"3. As soon as a necessity therefor shall arise by the placing of a dwelling house or houses upon the land of Roy Stoker, et ux, adjacent to the right of way hereinafter mentioned, the City of Breckenridge will lay a sewer down Cutting Avenue to connect with its mains, to which said Roy Stoker or his assigns may connect their dwelling houses.

"4. Said City of Breckenridge may withdraw and appropriate the sum of Thirty Eight Hundred Fifty ($3850.00) Dollars heretofore deposited with the County Clerk of Stephens County, Texas, in connection with the condemnation of land involved in said Cause No. 2945, and in addition thereto said City agrees to pay said Roy Stoker et ux the further sum of Seventeen Hundred Fifty ($1750.00) Dollars.

"5. Said Roy Stoker and his wife will execute, acknowledge and deliver to the State of Texas a deed to the surface of the land described by field notes in the resolution passed by the Board * * *.

"6. Said Roy Stoker and wife will execute, acknowledge and deliver to the Texas Electric Service Company a general warranty deed conveying to it the following described land * * *.

"7. Said City of Breckenridge will pay all court costs accrued and to accrue in the County Court in said Cause No. 2945.

"8. Said Roy Stoker and wife will remove from the right of way mentioned in Paragraph 5 above all obstructions except natural growth, including all houses and fences, owned by them by April 1, 1952, at their own cost and expense.

"Passed unanimously in Session at Breckenridge, Texas, on This 19th day of March, 1952.

"There being no further business to come before the meeting it was adjourned at 3:40 P. M.

"On this the 19th day of March, A. D., 1952, the City Commission of the City of Breckenridge met in special session in the regular meeting place of the City Hall at 4:00 P.M. with all members present, to-wit: * * *.

"The following business came on for consideration:

"All papers were checked and rechecked concerning the needed right of way from Roy and Leona Stoker.

"Upon motion by Mr. Bingham and seconded by Mr. Tolle that Resolution closing 208.5 feet of an alley lying * * * and that this property be given to Mr. Stoker, was unanimously passed.

"Upon motion by Mr. Bingham and seconded by Mr. Tolle that the Mayor be directed to execute another check for $1750.00 in favor of Mr. Roy Stoker and that he, Mr. Stoker, be directed to receive from the County Clerk an amount of $3,850.00 previously desposited by the City to pay for

the findings of a jury in Cause No. 2945, County Court. Motion carried unanimously.

"Mr. Stoker signed a deed to Texas Highway Department for Right-of-Way, a deed to Texas Electric Service Company for a small tract needed by them which was in exchange for a portion of a lot owned by the City.

"Upon motion by Mr. Bingham that the City sell to Mr. Roy Stoker the East 75' of North 250' of Block 10, Walker South Side for a cash consideration of $250.00. Motion carried by the following vote: * * *

"There being no further business the meeting adjourned at 4:50 P. M."

The resolution of March 18th expressly recites that the City agreed to extend both its water and sewer mains to Stoker's houses when they were moved to the "vicinity" of relocated Highway 6. The City Officials knew the location of Stoker's land in that "vicinity." The testimony that it was agreed that Stoker's houses could be moved from the right of way to the Stoker Addition is undisputed, as is Stoker's testimony, elicited by the City, that all members of the City Commission agreed to extend both water and sewer mains. The City knew Cutting Avenue was to be opened and extended south of its then southern terminal through the Stoker Addition to the southern edge of the City. It was expressly provided in the second resolution that the sewer main was to be extended down Cutting Avenue. Under the circumstances, Stoker's houses were moved to land in the "vicinity" of Highway 6 and "adjacent thereto." The second resolution provided that a sewer line would be laid down Cutting Avenue "as soon as a necessity" arose "by the placing of a dwelling house * * * upon the land of Roy Stoker, et ux, adjacent to the right of way * * *." Stoker's land, to which he moved his houses, was "adjacent" to the right of way. His land joined the east side of the right of way. Knowing the size, shape and location of Stoker's land and that Cutting Avenue was to be extended south through the

Stoker Addition, it would be unreasonable to conclude that the City intended that Stoker's houses should be placed only on the highway. On the contrary, the City knew that Cutting Avenue would be opened to the South and that Stoker's houses would be moved to Cutting Avenue and the City expressly agreed (in the second resolution) to lay a sewer line down Cutting Avenue to connect with its "mains." The first resolution reveals an agreement to extend both "water and sewer lines" to Stoker's houses when "they are moved in or built in this vicinity."

On March 19th, a second resolution was passed authorizing the Mayor to settle and compromise the City's condemnation suit against Stoker, and, later on the 19th, a third resolution relative to settling the City's controversy with Stoker was passed. It is evident that the second resolution, (the first of March 19th), was not, as the City now contends, the complete and final contract into which all prior agreements and negotiations were merged. The second resolution was re-written, according to the undisputed evidence, for the purpose of providing that the City, instead of Stoker, should pay the court costs. It was neither a final nor a complete contract, nor was it an accurate recital of the undisputed agreement, and, according to the City's records and the undisputed evidence, it was not the final resolution fixing the rights of the contracting parties. A subsequent resolution relative thereto was passed on the same day. The second resolution did not purport to rescind the contract to extend the water main, evidenced in writing by the resolution of the previous day. Paragraphs 1 and 7 of the second resolution both recite that the City is to pay the court costs. Paragraph 4 of the second resolution recites that the City, not Stoker, is to get the $3,850 deposited with the County Clerk in the condemnation case "and in addition thereto, the City is to pay Stoker $1,750. This, on its face, conflicted with the undisputed agreement of the City and the first resolution (which was carried out), that Stoker was to be paid $5,600. This agreement was correctly recited in

the second paragraph of the first resolution on March 18th. The second resolution also conflicts with the fourth paragraph of the third resolution, which recites, as does the resolution of March 18th, that Stoker, not the City, was to get the $3,850 deposited by the City in the condemnation suit. The City contends that the second resolution constitutes the entire, all inclusive and final contract between the parties and, because it recited that when Stoker placed houses on his land adjacent to the right of way the City would extend its "sewer" line "down Cutting Avenue," to which Stoker, "or his assigns, may connect their houses;" that this had the effect of destroying its contract to extend its water main. The language of the second resolution, even if taken alone, does not purport to rescind the previous agreement to extend its water main. It refers to "mains." Its only necessary effect is to fix the location of the extended sewer line "down Cutting Avenue." We think it is clear that all of said resolutions, taken together, eliminating those parts that necessarily conflict with a later provision, constitute the contract. Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989, 1003.

Stoker owned the land which the City had to acquire for extension of Highway 6 and the widening of Breckenridge Avenue, which are the same, through the City. On the land which the City obtained from Stoker were residences and a business house owned by him. They had water and sewer service. Stoker owned the land east of Breckenridge Avenue, and, in settlement of the condemnation suit and the controversy between the parties, it is conclusively established that it was contemplated that Cutting Avenue, which was already open to the North, should be opened and extended south to the City limits through the Stoker Addition; that the sewer main, which was already laid down the north end of Cutting Avenue to Power Street, should be extended south through the Stoker Addition, when Stoker moved his houses from the right of way conveyed to the City to his lots in the Stoker Addi-

tion. At that time there was a water main on Power Street, along the north end of the Stoker Addition, and there was a water main west of Breckenridge Avenue, which water line was, with the widening of Breckenridge Avenue, extended under the pavement of Breckenridge Avenue and Highway 6 to the west side of the Stoker Addition. It is undisputed that the City agreed to extend its sewer and water mains to Stoker's houses when Stoker moved or built houses on his land in that vicinity. It is undisputed that after the resolution of March 18th, which recites such agreement, there was never any subsequent agreement that the water main would not be extended. There was no subsequent discussion, or even mention, of eliminating from their former agreement the promise of the City to extend its water main. It would, of course, have been unreasonable to have agreed to do the useless thing of extending the sewer line to Stoker's houses without also extending the water main. The resolutions do not authorize such a construction.

It is undisputed that Stoker conveyed to the City, or those designated by it, valuable land that permitted the City to carry out its purpose of extending Highway 6 into a broadened Breckenridge Avenue across the town; that Stoker dedicated his addition to the town and spent a substantial amount of money clearing obstructions from the right of way and the south extension of Cutting Avenue, and moved his houses from the right of way to the east side of Cutting Avenue in the Stoker Addition. In other words, Stoker has completely performed his part of the contract. The City cannot return his property. It is owned and used by others. Stoker cannot effectively use or rent his houses moved from the Highway 6 right of way because the City has refused to extend its mains and furnish him with water and sewer service as it agreed to do. The City has performed part of its contract. It has paid Stoker according to its contract, but contrary to the recital of the second resolution, the $3,850 deposited by the City in the condemnation case. It has also paid him, "in addition," the sum of

$1,750 as agreed in all the resolutions. It has paid $5,600, as it agreed to do in the first resolution, dated March 18th. It has conveyed to him the property it agreed to convey in the first and second resolutions. It has done everything that it contracted to do except extend its water and sewer lines so that Stoker's houses moved from the right of way can be effectively used or rented.

■ The Commission of Appeals in Superior Incinerator Co. of Texas. **v.** Tompkins, 59 S.W.2d 102, 103, said:

"While the city could not lawfully rescind the contract made by its award of this construction work to relator without his consent, it unquestionably had the power to abandon the proposed improvement. This abandonment, however, subjects it to liability for such damages as relator may sustain, provided he is able to establish that his contract has been made in conformity to the provisions of the city's charter and ordinances governing the execution of such contracts. * * *

"It is a well-settled doctrine that a city has the power to abandon a proposed public improvement, even though in doing so it may breach a contract it has made therefor.

* * * * * *

"It is clear under all the authorities that the contract in question is one that cannot be enforced by specific performance. The city had the power to abandon the undertaking at any stage of the proceedings, even though the contractor had partially performed the contract. It is true that relator does not seek by this proceeding to compel the specific performance of the contract. Its action, however, is one to compel the performance of the execution of the contract. Inasmuch as the city has the power to abandon the undertaking with relator, and has seen fit to exercise such power, no right to enforce the execution of the

contract exists. In the case of People ex rel. Ryan v. Aldridge, supra, 83 Hun 279, 31 N.Y.S. 920, a similar situation was presented. It was there determined that such performance could not be compelled by mandamus, and in so declaring the court made this observation: 'We think that the principles thus stated are applicable to the case in hand, notwithstanding that the duty here sought to be enforced by mandamus is the execution, and not the performance, of the contract for the survey. * * * We have, then, the action of the committee in awarding the contract to the relator, binding upon the city because taken under the direction of its common council; but no further action on the part of the committee, enforceable by mandamus, because that direction has been revoked. The remedy of the relator, therefore, if any exists, is, as in the cases cited, by action for damages for breach of the contract actually made, and not to compel the execution of a further contract which the city, by its common council, has decided not to enter into. We think the discretion of the court was properly exercised at special term in the denial of the motion for a mandamus, and that the order should be affirmed.' "

"Mandamus is not an appropriate remedy for the redress of private contract rights, and it follows as a corollary to that rule that the writ will not generally be granted to compel a public officer, corporation, or other respondent to perform a duty or obligation assumed by contract, as distinguished from one imposed by law. An instance of such a duty is where land is taken for a highway and the municipality agrees with the landowner to construct the road in a certain manner; in such a case the duty as to the manner of constructing the road is one assumed by contract." 34 Am. Jur. 854.

"Obligations which rest solely upon contract will not be enforced by man-

damus where there is no question of trust or of official duty; it is not the appropriate remedy for the enforcement of private contract rights * * *." 34 Am.Jur. 849.

"Mandamus is not a proper remedy to compel municipal or public corporations to perform specifically their ordinary business contracts, unless the obligations of the contract are duties enjoined by law and there is no other adequate remedy." 55 C.J.S., Mandamus, § 168, pp. 317, 318.

"Under the general rule that mandamus will not lie to enforce contract or purely contract rights, it will not lie to compel public officers to carry out contracts between the State or public corporations and an individual * * *." 18 R.C.L. 235. See also 28 Tex.Jur. 542; Parrott v. City of Bridgeport, 44 Conn. 180, 26 Am.Rep. 439, 441; State ex rel. Cook v. Kelly, Mo.App., 142 S.W.2d 1091, 1094; Black v. City of Santa Monica, 13 Cal. App.2d 4, 56 P.2d 256, 257.

 Although Stoker cannot, by mandamus, compel the City to perform its contract, it does not follow that the City is not liable in damages for its breach. Of course, the City cannot take Stoker's property and apply it to a public use without compensating him therefor. Even if the contract had not been properly made, the City, having received Stoker's property and services under an agreement that it had the power to make, would be liable on an implied contract for the reasonable value of such property and services. City of Houston v. Finn, 139 Tex. 111, 161 S. W.2d 776, 777; West Audit Co. v. Yoakum County, Tex.Com.App., 35 S.W.2d 404, 407; Sluder v. City of San Antonio, Tex. Com.App., 2 S.W.2d 841; Edwards v. Lubbock County, Tex.Civ.App., 33 S.W.2d 482, 484; Waller County v. Freelove, Tex.Civ. App., 210 S.W.2d 602; Horne Zoological Arena Co. v. City of Dallas, Tex.Civ.App., 45 S.W.2d 714; City of Mission v. Eureka Fire Hose Mfg. Co., Tex.Civ.App., 67 S. W.2d 455.

 The City contends that the Strokers waived their claim for damages because they did not request submission of any issue relative thereto. The case was not submitted to the jury on special issues. The court, on its own motion, directed a verdict for the Stokers as to the sewer main and otherwise withdrew the case from the jury and rendered judgment. Under such circumstances, the Stokers did not waive their claim for damages by not requesting submission of an issue relative to damages and neither party was compelled to file a motion for new trial. Texas Rules of Civil Procedure, rules 279, 324.

We think the case was tried and decided on the wrong theory. That part of the judgment denying a mandamus relative to the water mains is affirmed, otherwise, the judgment is reversed and the cause remanded. Two-thirds of the cost of appeal are taxed against the Stokers and one-third against the City.