

# The Attorney General of Texas

October 10, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Hilmar G. Moore -
Chairman
Board of the Texas Department
   of Human Resources
706 Banister Lane
Austin, Texas 78769

Opinion No. MW-254

Re: Whether the Texas Board of Human Resources entered into a contract with Bradford National Corporation for administration of part of the Texas Medicaid Program

Dear Mr. Moore:

You inform us that on July 15, 1980, the Texas Board of Human Resources reviewed proposals submitted by National Heritage Insurance Company and Bradford National Corporation in response to the department's Request for Proposal for Administration of a Portion of the Texas Medicaid Program (RFP). This document, which consists of the bid specifications and information on bidding procedure, contemplates that the award of the contract to a bidder will create a binding obligation. See RFP 8.1.13.0.0.0.

On July 15, 1980, the board heard reports on the activities of the Bid Evaluation Committee, which analyzed the technical and pricing proposals of both bidders, and on the review of those activities by the Executive Review Panel. The chairman of the Executive Review Panel and a consulting actuary stated that Bradford afforded the more favorable price. After additional discussion and remarks by the representatives of each bidder, board members stated as follows:

> Mr. Bray: Mr. Chairman, I would like to make a motion if I may. [discussion about evaluations made of both bidders ending with remarks about Bradford] . . . on those bid elements Bradford comes out significantly to the good for the State of Texas.
>
> Thus, I wish to make a motion that this contract be awarded to Bradford subject to successful consummation of a contract that would include maximum use of the Texas Banking system with respect to the funding and which would include consideration not necessarily in the contract but consideration during the contract deliberations of trying to specify some methodology for premium setting in future years.

> Mr. Jimenez: There would be a clause that the money would be in the State of Texas.
>
> Mr. Bray: To the maximum extent feasible.
>
> Mr. Jimenez: In that case, I will second the motion, Mr. Chairman.
>
> Mr. Moore: the chair concurs-unanimous choice. One other thing that we have not mentioned is we are still in business with NHIC for at least 15 more months. I just want to echo what Terry so eloquently said that our relationships have been wonderful. We expect them to continue wonderful and we hope when the contract comes up for bid again that we see you again.

You first ask whether the action of the board at its July 15, 1980 meeting created a legally binding contractual obligation. In answering this question, we must apply the law to the facts which the department and the two bidders have provided us. Our opinion is necessarily limited to the facts which we discuss. You have not asked, and we do not decide, which was the lowest and best bidder. See V.T.C.S., art.60lb, §3.11(e). This determination involves the resolution of fact questions and the exercise of discretion by the board. See generally Attorney General Opinions M-890 (1971); M-392 (1969); C-788 (1966); V-1565, V-1536 (1952), Letter Advisory No. 75 (1973).

Section 3.01 of article 60lb, V.T.C.S., authorizes the Purchasing and General Services Commission to contract for services needed by a state agency. See also §3.02. However, this purchasing function has been delegated back to the department under section 3.06 of article 60lb, V.T.C.S. The department also has authority to enter into contracts under section 22.002(f) of the Human Resources Code.

No question has been raised as to whether applicable federal statutes and regulations have been complied with and we do not address this issue.

Our opinion is based solely on the written documentation and transcript presented to us. In our opinion, the action taken by the board at the July 15, 1980 meeting constituted an award of the contract, subject to the performance of conditions subsequent and they did not have to sign a formal agreement in order to be bound.

Although the courts of some states have held that a public entity could rescind its award of a bid prior to signing a formal contract, this result is generally based on a statute expressly requiring a signed written contract. See Schull Construction Co. v. Board of Regents of Education, 113 N.W. 2d 663 (S.D. 1962); Annot., 3 A.L.R. 3d 864, 868 (1965). Another line of cases supports the view that a binding contract is created when the award is made and communicated to the successful bidder even though a statute requires a signed contract. See United States v. Purcell Envelope Co., 249 U.S. 313 (1919). See Annot., supra, at 871.

In Superior Incinerator Co. v. Tompkins, 59 S.W. 2d 102 (Tex. Comm'n App. 1933) the court adopted the latter view. The Board of Commissioners of the City of Dallas accepted one of the bids for a public works contract and directed the execution of the contract. Before the city auditor could sign the contract, an act required by the city charter to form a binding contract, a newly elected Board of Commissioners voted to rescind the contract. The court held as follows:

> After the contract in question had been awarded, the city could not lawfully rescind the same without the consent of the contractor. A contract is just as binding upon a municipal corporation as upon an individual. To determine that such a corporation may annul the obligation of its contract made with an individual would be to allow it a greater power than is possessed by the state which created it. (Emphasis added).

59 S.W. 2d at 103.

A prior opinion of this office dealt with the power of a state agency to rescind its acceptance of a bid. Attorney General Opinion WW-434 (1958) concerned the acceptance of bids for lease of school lands by the School Land Board. The statute required the minutes to show the fact of acceptance or rejection of a bid and stated that the approval of the minutes would constitute the approval of the act of acceptance or rejection. Following the acceptance of bids but prior to approval of the minutes, a controversy arose about the award of a particular lease. The School Land Board wished to know whether it could reconsider a bid acceptance, prior to approval of the minutes. The opinion stated as follows:

> . . .it seems apparent that if the Legislature intended to give the Board the right to accept an offer and the right to cancel the action when the minutes are up for approval two or three weeks later, this would be an unusual arrangement and generally at variance with the customary method of entering into contractual agreements, but the Legislature could do this if that seemed to it to the best interest of the School Fund.

It also noted the customary business usage of awarding contracts in one action only. Construing the statute in light of these considerations, the opinion concluded that the board had a ministerial duty to approve the minutes which accurately reflected the acceptance of the bid. See also Attorney General Opinion V-1536 (1952) (board for state hospitals may not delegate power to award contract but may delegate ministerial duty of signing contract).

We believe the views expressed in Superior Incinerator Co. v. Tompkins and Attorney General Opinion WW-434 on the finality of the bid acceptance are relevant to your question. We do not believe the department may revoke its acceptance of a bid by later refusing to sign the contract. Whether all conditions subsequent have been or will be met is a fact question which we cannot resolve in an Attorney General Opinion.

You state that the RFP provides that the contract contain the following language:

> The contract may be terminated if DHR deems that such termination would be in the best interest of the State. Under this condition, those termination costs shall be paid by DHR to the Contractor which are stipulated in the contract.

You ask whether the contract can be terminated prior to execution pursuant to this provision. Whether or not this contract is in the best interest of the state is a fact question. In deciding to exercise your privilege under this clause, the department must make a reasonable, good faith judgment that termination is in the best interest of the state. See Golden State Mutual Life Insurance Co. v. Kelley, 380 S.W. 2d 139 (Tex. Civ. App. - Houston 1964, writ ref'd n.r.e.); Porter v. United Motels, Inc., 315 S.W. 2d 340 (Tex. Civ. App. - Waco 1958, no writ). See also Board of Regents v. S&G. Construction Co., 529 S.W. 2d 190 (Tex. Civ. App. - Austin 1975, writ ref'd n.r.e.). The provision does not authorize unilateral termination without cause.

## SUMMARY

The action of the Board of Human Resources at its July 15, 1980 meeting created a legally binding contractual obligation with the Bradford Company. Whether the department may terminate the contract as not being in the best interest of the state is a fact question, which the department must determine in the exercise of reasonable, good faith judgment.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Susan Garrison & David Young
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Susan Garrison, Acting Chairman
Jon Bible
Paul Gavia
David Young