Honorable D.C. (Jim) Dozier Montgomery County Attorney Montgomery County Courthouse Conroe, Texas 77301
Mr. Charles E. Nemir, P.E. Executive Director Texas State Board of Registration for Professional Engineers P. O. Drawer 18329 Austin, Texas 78760
Re: Authority of a commissioners court to award "design/build" contracts for construction of public buildings on the basis of competitive bids and related questions (RQ-1895)
Gentlemen:
 Mr. Dozier advises us that the commissioners court of Montgomery County is considering the construction of certain public works through the award of so-called "design/build" contracts. His description of the design/build concept is "the award of a single contract for both architectural design and construction to a single contractor for a lump sum fee.
Mr. Dozier asks the following questions:
 1. Does the proposed design/build procedure comply with the requirements of applicable competitive bidding laws?
 2. In light of article 664-4, V.T.C.S. the Professional Services Procurement Act, does the inclusion of architectural design services as a component of the design/build contract violate the prohibition on award of professional services through a competitive bidding process?
 3. Assuming the application of article 249a, section 16, V.T.C.S. must the preparation of the required architectural plans and specifications precede competitive bidding to serve as a foundation for bid specifications or may they be produced following award of a design/build construction contract?
Following receipt of Mr. Dozier's request, Mr. Nemir asked that our opinion consider these issues as they relate to professional engineering services governed by article 664-4, section 3A, V.T.C.S., and article 3271a, section 19(a), V.T.C.S.
The answer to these questions lies in an examination of the commissioners court's capacity to make the kind of contract you describe. Before we can ascertain the court's authority, however, it is appropriate to examine design/build construction contracts in closer detail.
The traditional design and construction services model has been described as a linear relationship between the architect, the owner of the project, and the contractor. Block, As the Walls Came Tumbling Down: Architects' Expanded Liability Under Design-Build/Construction Contracting, 17 John Marshall L.Rev. 1 (1984). This also describes the contractual relationship between the parties. In the traditional tripartite arrangement, the owner occupies the middle position, contracting with the architect and the contractor on either side. Id. The relationship is represented schematically as follows:
Architect ___ Owner ___ Contractor
 Under this arrangement, no privity of contract developed between the architect and contractor. The architect is described as having a fiduciary relationship with the owner and acting as a channel of communication with the contractor and arbitrator of any disputes. Id.
The design/build concept is a significant departure from the traditional arrangement. Under the design/build concept, the owner contracts with a single party for both the design and construction of the entire project. Id. The single party may be either the architect/engineering firm, the contractor, or both acting in tandem as a joint venture. Id.; Canterbury, Texas Construction Law Manual § 6.09 (1981); Practicing Law Institute, Construction Contracts 1985, 33-36 (1985). Viewed schematically, this is how the relationship appears:
Owner
Design/Build Team
Architect/Engineering firm and/or Contractor
See Practicing Law Institute, supra. The entity contracting with the owner undertakes either to design and build the entire project using the owner's financial resources and present the owner with a finished product or to present the owner with the finished product on a "turn-key" basis.[1] Block, supra, at 8; see, e.g., Seaview Hosp., Inc. v. Medicenters of America, Inc., 570 S.W.2d 35 (Tex.Civ.App.-Corpus Christi 1978, no writ).
The design/build approach to construction contracting offers the distinct advantages of reducing the time necessary to negotiate a contract for the entire project, reducing the time required to complete the project, and affording the owner considerable flexibility in the ultimate design of the project. See Grant, A New Look at Design/Build, 7 The Construction Lawyer 3 (April 1987). However, the design/build method also has its disadvantages. For example, the arms-length relationship between the design professional and the builder is eliminated. Id. The traditional contracting method delegates various functions to different contractors, creating what has been called a "`healthy tension'" and installing a check-and-balance mechanism into the process. Id. By combining the design and construction functions, the design/build contract is said to make the architect less of an agent for the owner since he is essentially acting in partnership with the builder. Practicing Law Institute, supra.
The threshold issue underlying each of the questions is whether a commissioners court may, on behalf of the county, enter into a construction contract that includes architectural services on the basis of competitive bidding. Because the Professional Services Procurement Act, V.T.C.S. article 664-4, prohibits the procurement of architectural or engineering services through competitive bidding, we conclude that a commissioners court does not possess the authority to award a design/build contract for the construction of a public work on the basis of competitive bids where architectural or engineering services comprise a component of the contract.
The authority of the commissioners court to make contracts on behalf of the county is subject to well established rules. It is axiomatic that the commissioners court's authority is limited to that conferred either expressly or by necessary implication by the constitution and laws of the state. Childress County v. State, 92 S.W.2d 1011, 1016 (Tex. 1936); Jack v. State,694 S.W.2d 391, 397 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). Contracts made in violation of statute are void and not subject to ratification by the commissioners court. Jack v. State, supra.
Section 3 of the Professional Services Procurement Act provides the following:
 No state agency, political subdivision, county, municipality, district, authority or publicly-owned utility of the State of Texas shall make any contract for, or engage the professional services of, any licensed physician, optometrist, surgeon, architect, certified public accountant, land surveyor, or registered engineer, or any group or association thereof, selected on the basis of competitive bids submitted for such contract or for such services to be performed, but shall select and award such contracts and engage such services on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices, as long as professional fees are consistent with and not higher than the published recommended practices and fees of the various applicable professional associations and do not exceed the maximum provided by any state law.
 Parsing this provision to its essential elements, section 3 reads: "No . . . county . . . shall make any contract for, or engage the professional services of, any licensed . . . architect . . . or registered engineer . . . selected on the basis of competitive bids . . ., but shall select and award such contracts and engage such services on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices."
"Professional services" are declared by the act to be, among other things,
 those within the scope of the practice of . . . architecture . . . or professional engineering as defined by the laws of the State of Texas or those performed by any licensed architect . . . or professional engineer in connection with his professional employment or practice.
V.T.C.S. art. 664-4, § 2. The act thus prohibits the procurement through competitive bids of services within the scope of the practice of architecture or engineering, even though the contract may not call for the services of a licensed architect or registered engineer.[2] Contracts for such services must be made in accordance with the procedures described in section 3A of the act. Contracts made in violation of any of the provisions of the act are declared void. Id. § 4.
A commissioners court, or for that matter any entity subject to article 664-4, is thus prohibited from awarding a contract for architectural services, engineering services, or any other service specified in the act, on the basis of competitive bidding. Cf. Attorney General Opinion JM-282 (1984) (distinguishing contracts for the construction of a building and contracts for the planning of the construction of a building; the former are subject to competitive bidding while the latter, which call for professional or consultant services, are not). It follows that a commissioners court lacks the authority to make a contract for the construction of public works under the "`design/build'" concept when the resulting contract is awarded pursuant to competitive bidding and includes architectural or engineering services as a component of the contract. The proposed design/build procedure described in Mr. Dozier's letter is therefore incompatible with competitive bidding laws.[3]
One argument marshalled in support of the design/build procedure is that it can result in significant savings to a county. Savings is, of course, one of the primary objectives of the competitive bidding apparatus. The courts, however, have recognized that when the acquisition of professional services is involved, competitive bidding may actually be detrimental to the public interest:
 To hold that the [competitive bidding] act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained . . . only through competitive bidding would give a ridiculous meaning to the act . . . . Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man. . . .
Hunter v. Whiteaker Washington, 230 S.W. 1096, 1098
(Tex.Civ.App.-San Antonio 1921, writ ref'd) (involving a contract for engineering services); see also Stephens v. J.N. McCammon, Inc., 52 S.W.2d 53 (Tex. 1932) (architectural services); Attorney General Opinion JM-940 (1988) (services of a construction management consultant).
The legislature has incorporated this thinking into competitive bidding statutes by enacting exemptions for professional services. See, e.g., Local Gov't Code § 262.024(a)(4). As for the services covered by article 664-4, the legislature has gone a step further by expressly prohibiting their procurement on the basis of competitive bidding. Thus, while it might be argued that competitive bidding statutes do not require, but at the same time do not forbid, contracts for architectural and engineering services to be awarded by competitive bids, article 664-4 affirmatively bars counties from awarding such contracts on that basis.
Taking into account Mr. Nemir's request, the third question becomes whether section 16 of article 249a or section 19 of article 3271a requires the preparation of architectural or engineering plans and specifications in advance of competitive bidding to serve as a foundation for bid specifications, or whether such plans may be prepared following the award of a design/build construction contract.
Section 16 of article 249a, effective January 1, 1990, provides the following:
 To protect the public health, safety, and welfare of the citizens of the State of Texas, an architect registered in accordance with this Act must prepare the architectural plans and specifications for a new building intended for education, assembly, or office occupancy whose construction costs exceed One Hundred Thousand Dollars ($100,000.00) which is to be constructed by a State agency, a political subdivision of this State, or any other public entity in this State.
Acts 1989, 71st Leg., ch. 858, at 3839. A county is a political subdivision of the state. Childress County v. State, supra.
Section 19 of the Texas Engineering Practice Act, V.T.C.S. article 3271a, provides the following:
 (a) It is unlawful for this State or any of its political subdivisions, including any county, city, or town, to engage in the construction of any public work involving professional engineering, where public health, public welfare or public safety is involved, unless the engineering plans and specifications and estimates have been prepared by, and the engineering construction is to be executed under the direct supervision of a registered professional engineer. However nothing in this Act shall be held to apply to any public work wherein the contemplated expenditure for the completed project does not exceed Eight Thousand ($8,000.00) Dollars.
 (b) This Act shall not apply to any road maintenance or betterment work undertaken by the County Commissioners' Court.
Neither section 16 of article 249a nor section 19 of article 3271a by its terms requires the preparation of architectural or engineering plans and specifications for a construction project by a licensed architect or registered engineer prior to competitive bidding. It has been suggested that requests for proposals can be drawn with sufficient detail to meet the requirements of competitive bidding even in the absence of detailed plans and specifications. Alternatively, it is argued that this question requires the resolution of fact issues that cannot be accomplished in an opinion of the attorney general.
It is quite true that determination of the adequacy of bid specifications in a given case will require the resolution of fact issues. Indeed, a noted authority cautions that since it is sometimes difficult to know the detail to which drawings and specifications must be carried, competitive bidding requirements should be interpreted in a manner that secures the object for which they were intended. 10 E. McQuillen, The Law of Municipal Corporations § 29.53 (1990 rev.). According to this authority, it is not necessary that plans and specifications show every minor part or component of the structure to be built or product to be purchased, only that enough detail appear as to make it clear what is intended and what result is to be accomplished. Id. Another authority, on the other hand, suggests that detailed design specifications are better suited to construction projects than to product acquisition. The Council of State Governments, State and Local Government Purchasing 45 (3rd ed. 1989). There are numerous Texas authorities which suggest that competitive bidding requires the preparation of detailed architectural and engineering plans prior to the invitation of bids for a construction project.
In his letter Mr. Dozier cites Headlee v. Fryer, 208 S.W. 213
(Tex.Civ.App.-Dallas 1918, writ dism'd), a case involving the award of a contract for the construction of a county courthouse based only upon "a tentative synopsis of specifications and pencil sketches of floor plans and a drawing of the building." He quotes language from the case describing the role of the commissioners court prior to inviting bids for construction:
 [I]t occurs to us that they are put to the necessity of being prepared to present to those who may appear to bid upon the contract some intelligent and concrete statement of the work required to be done or the structure to be erected as would tend to induce competition, depending in every instance upon the character of the undertaking.
208 S.W. at 216. The court emphasized that without a precise description of what the county required, no responsible contractor acting in good faith could bid on the project, and thus competition would be stifled. See also 35 D. Brooks, County and Special District Law § 18.7 (Texas Practice 1989).
In another case, a court upheld the action of a city board of commissioners that rescinded a contract for the construction of an incinerator that the board concluded had been awarded in violation of the city's competitive bidding ordinance. The specifications for the project contained several material omissions, including the size of the building to house the incinerator, number and dimensions of furnaces, size of flues, chimney dimensions, and number of stairways and doors.[4]
Superior Incinerator Co. of Texas v. Tompkins, 37 S.W.2d 391, 396
(Tex.Civ.App.-Dallas 1931), aff'd 59 S.W.2d 102 (Tex. Comm'n App. 1933, holding approved). The court defined "specifications" as "`not only the dimensions and mode of construction, but a description of every piece of material — its kind, length, breadth, and thickness — and the manner of joining the separate parts together.'" Id. at 395-396. It concluded that under these circumstances no complete specifications were drawn up and adopted prior to the advertisement for bids. Consequently, no two prospective bidders could bid on the same character of improvement, making competitive bidding impossible. Id. at 396.
Mr. Nemir cites Attorney General Opinion JM-282 (1984), where we were asked, among other things, whether a state university could solicit and receive competitive bids for the construction of permanent improvements before plans and specifications were completed, with only a general project description serving as a guide to potential bidders. After observing a distinction between bids for the actual construction of the improvements and offers to serve as construction management consultant for the project, we answered the question in the negative. Our answer was followed by these remarks:
 A general project description of incomplete plans and specifications will not furnish a sufficient basis on which competitive bids for the construction of a project can be received. . . . As noted in Attorney General Opinion H-24 (1973), a procedure does not result in competitive bids where bid documents leave to conjecture requirements governing the bids and only by happenstance would all interested bidders arrive at a common conclusion regarding their meaning. See also Attorney General Opinion MW-299 (1981). (Emphasis in original.)
The opinion then quoted the following language from Sterrett v. Bell, 240 S.W.2d 516, 520 (Tex.Civ.App.-Dallas 1951, no writ), cited with approval in Texas Highway Comm'n v. Texas Ass'n of Steel Importers, 372 S.W.2d 525 (Tex. 1963):
 `Competitive bidding' requires due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. . . . There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project.
Admittedly, these authorities do not hold that final architectural and engineering plans and specifications must be drawn in advance of competitive bidding in every case, but they make it clear that a particular bidding procedure may be faulted for being non-competitive if detailed plans and specifications are not prepared in advance. Furthermore, the award of a contract on the basis of nothing more than a general project description might also alter the duties and liabilities of the public entity and the construction contractor. Cf. Board of Regents of the Univ. of Texas v. S G Constr. Co., 529 S.W.2d 90
(Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.) (builder held not liable for delays in completion of construction resulting from owner's failure to provide builder with "correct plans and specifications" and additional instructions and detail drawings necessary to carry out work under contract; rather, owner found in breach of contract, entitling builder to damages).
Accordingly, neither section 16 of article 249a nor section 19 of article 3271a expressly requires the preparation of architectural and engineering plans and specifications prior to the invitation of bids by a county for a construction contract. But absent a provision to the contrary, such a requirement is implicit in competitive bidding statutes.
 SUMMARY
A commissioners court is prohibited by article 664-4, V.T.C.S., from awarding a "design/build" contract for the construction of a public work on the basis of competitive bidding where architectural or engineering services comprise a component of the contract. Neither article 249a, section 16, nor article 3271a, section 19, requires the preparation of architectural and engineering plans and specifications prior to the invitation of bids by a county for a construction contract. But absent a provision to the contrary, such a requirement is implicit in competitive bidding statutes.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Renea Hicks Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Steve Aragon Assistant Attorney General
[1] A "turn-key" project is one in which the contractor agrees to complete the construction process to the point of readiness for occupancy, assuming responsibility for design of the project and for all risks, unless such responsibility is waived or limited by contract. See Mobile Hous. Env'ts v. Barton Barton,432 F. Supp. 1343, 1346 (D.Colo. 1977); Gantt v. Van der Hoek,162 S.E.2d 267, 270 (S.C. 1968). At the time of occupancy, all that is required of the buyer is that he simply "turn the key" to open the door. See Glassman Const. Co. v. Maryland City Plaza, Inc., 371 F. Supp. 1154, 1159 (D.Md. 1974).
[2] Architectural and engineering plans and specifications for certain public works of a specified cost must be prepared only by architects and engineers registered with the state. See V.T.C.S. arts. 249a, § 16 (architectural plans for public buildings whose construction costs exceed $100,000); 3271a, § 19 (engineering plans for public works whose cost is more than $8,000).
[3] You do not ask and we therefore do not consider whether design/build contracts may be awarded without resort to competitive bidding because they include architectural or other professional services as a component of the contract. This opinion should not be read as tacit approval of such arrangements. See Superior Incinerator Co. of Texas v. Tompkins,37 S.W.2d 391 (Tex.Civ.App.-Dallas 1931), aff'd, 59 S.W.2d 102
(Tex. Comm'n App. 1933, holding approved). Neither have you asked whether a design/build firm which prepares architectural or engineering plans or specifications for a public works project may submit a bid on the resulting construction contract. See Attorney General Opinions JM-940 (1988); JM-282 (1984).
[4] In fact, the specifications called for the prospective bidder to design the incinerator and to submit complete working drawings covering the design with the bid. The court, responding to this provision and citing numerous authorities, adopted a broad rule: "A competitive bidding statute is fundamentally violated where the bidder is asked to furnish plans and specifications, and an award made under such circumstances is void." Superior Incinerator Co. of Texas v. Tompkins,37 S.W.2d 391, 397 (Tex.Civ.App.-Dallas 1931), aff'd 59 S.W.2d 102 (Tex. Comm'n App. 1933, holding approved).