**RICHMOND PRINTING, Appellant,**

v.

**The PORT OF HOUSTON AUTHORITY,**
**Appellee.**

**No. 14–98–00087–CV**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 25, 1999.

---

Sanford Lawrence Dow, J.W. Beverly, Houston, for appellants.

Harold A. Odom, Sean Alan Roberts, Houston, for appellees.

Before Justices ANDERSON, EDELMAN, and SEARS.*

## OPINION

ROSS A. SEARS, Justice (Assigned).

The dispute in this case arises from a breach of contract claim. Richmond Printing (Richmond) sued the Port of Houston Authority (the Authority) alleging that the Authority wrongfully canceled the contract. The Authority filed a motion for summary judgment asserting that the contract was void and legally unenforceable. Richmond replied to the Authority's motion and filed a writ of mandamus requesting the trial court to order the Authority to execute the contract. The trial court granted the Authority's summary judgment. We affirm.

### Background

In October 1995, Richmond bid on and was awarded a contract in the amount of $225,797 to print twelve issues of the 1996 edition of *Port,* the monthly Port of Houston magazine. The Authority further authorized its executive director, Kornegay, to do all things necessary to give effect to the contract. On December 13, 1995, Martha Williams, General Counsel for the Authority, sent Zahoor Gire, the Vice President of Richmond, a letter and enclosed four copies of the contract. The letter specifically requested that the contract be executed by the appropriate representative of Richmond and returned to the Authority within ten days. The letter also stated that "when the signatures on behalf of the Port Authority [had] been obtained a fully executed copy [would] be forwarded to you for your files." Richmond never received a fully executed copy containing the appropriate signatures of the Authority. Therefore, a written, executed contract never existed.

Despite the lack of a legally enforceable contract, both parties proceeded under the mistaken assumption that a valid contract

existed. Accordingly, Richmond printed the January issue of *Port.* After receiving the January issue, on January 17, 1996, the Authority notified Richmond of numerous violations of the bid specifications and gave Richmond seven days from the receipt of the notice to cure these deficiencies. This letter further warned that any future deviations from the bid specifications would result in an immediate termination of the contract. On January 24, 1996, Richmond responded to the Authority's concerns and agreed to meet specifications. Richmond then issued the February edition of *Port* which also failed to meet the bid specifications. Thereafter, on January 25, 1996, the Authority terminated its "contract" with Richmond effective immediately. Richmond was paid in full for all work performed up to the date of termination.

On December 16, 1996, Richmond sued the Authority for breach of contract and sought damages for potential lost profits on the remaining ten issues. The Authority counterclaimed seeking declaratory relief that the "contract" was void and legally unenforceable and filed a motion for summary judgment. Richmond replied and filed a writ of mandamus asking the district court to order the Authority to complete execution of the contract. The trial court granted summary judgment in the Authority's favor. In four points of error, Richmond asserts the trial court erred by: (1) granting the Authority's summary judgment because a legally enforceable contract existed; (2–3) granting the Authority's summary judgment because the Authority ratified or validated the contract by estoppel; and (4) denying its writ of mandamus because the Authority failed to perform its ministerial acts or clearly abused its discretion regarding the Texas Water Code.

### Standard of Review

The standard we follow when reviewing a summary judgment is well-rehearsed.

* Justice Sears sitting by assignment.

Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *See id.* A summary judgment may be affirmed on any of the movant's theories that have merit. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex.1996).

### Analysis

■ Richmond contends in its first point of error that the trial court erred in failing to find an enforceable contract. The Authority is a political subdivision of the State of Texas, originally created under article III, section 52 of the Texas Constitution, and it is currently operated under that section and article XVI, section 59 of the Texas Constitution. The Authority adopted by resolution the competitive bidding process under subchapter N of the Texas Water Code. *See* TEX. WATER CODE ANN. § 60.401. (Vernon 1988). The Texas Legislature enumerated the requirements that must be completed for the Authority to enter into a legally enforceable contract as follows:

(a) The bids shall be presented to the port commission in session.

(b) The port commission may award the contract to the responsible bidder submitting the lowest and best bid, or the port commission may reject any or all bids.

(c) If two responsible bidders submit the lowest and best bid, the port commission shall decide between the two bids by drawing lots in a manner prescribed by rule by the chairman of the port commission.

(d) A contract may not be awarded to a bidder who does not submit the lowest bid meeting specifications unless, before the award, each person with a lower bid is given notice of the proposed award and an opportunity to appear before the port commission and present evidence concerning his responsibility.

(e) A contract shall be awarded at a regularly scheduled or specially called meeting of the port commission.

(f) The contract must be in writing, executed for the district or port authority by its executive or designated officer, and filed with the proper officer of the district of port authority.

(g) Before a contract takes effect or is binding on a district or port authority, the appropriate financial officer of the district or port authority must certify that funds are or will be available to meet the contract when due.

(h) A requisition or purchase order must be issued in duplicate with one copy delivered to the contractor and one copy remaining in file with the district or port authority.

(i) A purchase or contract that is not in compliance with this subchapter is void and unenforceable.

TEX. WATER CODE ANN. § 60.408 (Vernon 1988).

The Authority completed the first five of these requirements, (a)-(e). The Authority, however, never received the properly executed contract from Richmond. Therefore, there was no appropriate financial verification of available funds, or issuance of a purchase order or requisition. Hence, three of the eight steps required by the Texas Water Code for the Authority to enter into a legally enforceable contract were not met. Nevertheless, Richmond argues that an enforceable contract existed

at the time the "contract" was awarded because it had fulfilled all its obligations.

■ We disagree. We hold it is the duty of the successful bidder to verify that all of the requirements of the statute are met before work commences. Otherwise, any contractor who starts work without a purchase order, for example, does so at its own peril.

The language the Legislature used in section 60.408 could not have been clearer. Specifically, "[a] purchase or contract that is *not in compliance* with this subchapter is *void and unenforceable.*" TEX. WATER CODE ANN. § 60.408(i) (emphasis added). The record clearly establishes that three of the eight necessary steps were not completed; therefore, based on the plain language of the statute, no enforceable contract ever existed.

■ There is no case law interpreting section 60.408. However, it has been recognized that the primary purpose of such a bidding statute is to encourage competition, and compliance with it is mandatory. *See Niles v. Harris County Fresh Water Supply Dist. No. 1A*, 336 S.W.2d 637, 638 (Tex.Civ.App.—Waco 1960, writ ref'd). When a governmental entity enters into a contract that violates or fails to conform with the Constitution or a statute of the state, the governmental entity is not liable in contract. *See Harris County v. Emmite*, 554 S.W.2d 203, 204 (Tex.App.—Houston [1 st Dist.] 1977, writ dism'd w.o.j. ). Therefore, we hold that the evidence demonstrates as a matter of law that all the requirements of section 60.408 were not met and that no legally enforceable contract ever existed. Accordingly, we overrule Richmond's first point of error.

### Ratification

■ In its second point of error, Richmond contends the trial court erred in granting the Authority's motion for summary judgment because the contract was ratified.

■ As a general rule, void contracts cannot be ratified. *See TCA Bldg. Co. v. Northwestern Resources Co.*, 922 S.W.2d 629, 634 (Tex.App.—Waco 1996 writ denied); *Peniche v. Aeromexico*, 580 S.W.2d 152, 157 (Tex.App.—Houston [1 st Dist.] 1979, no writ). Similarly, a contract made in violation of a statute is "illegal and void and therefore not subject to ratification." *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). However, this does not completely forbid all types of recovery. Where a governmental entity receives benefits under a void contract because it was not made in conformity with the Constitution or a state statute, it will be liable on an implied contract for the reasonable value of benefits. *See Emmite*, 554 S.W.2d at 204.

Richmond cites *Gallup v. Liberty County*, 57 Tex.Civ.App. 175, 122 S.W. 291 (1909, writ ref'd) and*McKenzie Const. Co. v. City of San Antonio*, 50 S.W.2d 349 (Tex.Civ.App.—San Antonio 1932, writ ref'd) for the proposition that contracts entered into without conformity with statutory requirements may be ratified. In both of these cases, all the benefits had already been received and accepted. *See Gallup*, 122 S.W. at 292–93; *McKenzie*, 50 S.W.2d at 352. Therefore, the improperly formed or invalid contracts had already been completed leaving nothing to be ratified.

In this case, the Authority paid Richmond for all of the benefits received and services rendered through the termination of the alleged contract. We find that the trial court correctly granted summary judgment as a matter of law because the contract was void and not capable of being ratified. *See Emmite*, 554 S.W.2d at 204. In addition, any damages based on an implied contract theory have already been paid by the Authority and received by Richmond. Accordingly, we overrule Richmond's second point of error.

### Estoppel

■ Richmond asserts the trial court erred by granting summary judgment in

favor of the Authority because the Authority is subject to estoppel. Specifically, Richmond argues that the Authority recognized the existence of a contract and received and accepted the benefits under it.

■ In Texas, the general rule is that a governmental entity, exercising its governmental powers, is not subject to estoppel. *See City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970). Even when an individual purchased land for a specific purpose relying on an erroneously marked map concerning the zoning, the court held that although there had likely been an injury, the injury is not one for which the law provides relief because the governmental entity had exercised its governmental powers in making the map. *See Harvey v. City of Seymour,* 14 S.W.2d 901 (Tex.Civ.App.—Eastland 1929, no writ).

To enter into a contract, the Authority must exercise it governmental powers. Section 60.408 of the Texas Water Code enumerates the specific governmental powers that must be satisfied to legally contract. TEX. WATER CODE ANN. § 60.408(i). A contract that is not in compliance with section 60.408 is void and unenforceable. *See id.* Moreover, the burden was on Richmond to verify full compliance with section 60.408. Because of its failure to determine that the contract was properly executed, Richmond never received a fully executed contract. Thus, there could not have been any legitimate reliance that a valid contract actually existed. *See City of Lubbock v. Geo L. Simpson & Co.,* 31 S.W.2d 665, 667 (Tex. Civ.App.—Amarillo 1930, writ dism'd w.o.j.). As a bidder on a governmental contract Richmond knew or should have known of the requirements of the statute. *See id.* When Richmond performed services without a contract or a purchase order, it did so at its own risk. Since all the requirements of the statute were never met, the "contract" was incapable of validation by estoppel. Accordingly, we overrule Richmond's third point of error.

## Mandamus

■ Mandamus is an extraordinary remedy, not issued as a matter of right but at the discretion of the court. *See Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993). Mandamus is not an equitable remedy; however, its issuance is largely controlled by equitable principles. *See id.* "Mandamus will issue to compel a public official to perform a ministerial act. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points,* 806 S.W.2d 791, 793 (Tex.1991) (citation omitted). A writ will not be issued to compel a public official to perform an act which involves an exercise of discretion. *See id.*

■ We review a trial court's refusal to grant a writ of mandamus under an abuse of discretion standard. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992). The trial court's refusal will be upheld unless the appellant demonstrates that the trial court acted without reference to any guiding rules or principles or acted arbitrarily or unreasonably in determining that the Authority was not required to perform any purely ministerial acts. *See PCA Health Plans of Texas, Inc. v. Rapoport,* 882 S.W.2d 522, 523–24 (Tex.App.— Austin 1994, no writ).

■ Richmond asserts the trial court abused its discretion in denying its writ of mandamus. Specifically, Richmond argues that once a contract is awarded section 60.408 requires the Authority to reduce the contract to writing, obtain the appropriate financial certification of available funds, and issue a purchase order. A plain reading of the statute, however, demonstrates that Richmond is wrong. *See* TEX. WATER CODE ANN. § 60.408; *Sorokolit,* 889 S.W.2d at 244 (recognizing that if language of a statute is clear, it controls). The statute's subparts (f), (g), and (h) state what must be accomplished before the Au-

thority enters into a valid contract.[1] The evidence shows that the Authority never received the executed contract from Richmond. Therefore, without the executed contract the requirements of the statute could not be completed and no valid contract existed.

The court in *Superior Incinerator Co. v. Tompkins* was faced with a similar issue, a mandamus concerning a city's bidding procedure. 59 S.W.2d 102, 103–104 (Tex. Comm'n App.1933, holding approved). In *Tompkins,* Superior sought a writ of mandamus against the city auditor whose signature was required to properly execute a contract that had been awarded to Superior. *See id.* The auditor refused to sign the contract because the City changed its mind about proceeding with the project. *See id.* The applicable city charter provided that "no contract shall be binding upon the city unless it has been signed by the Mayor and countersigned by the Auditor." *Id.* at 103. The court held that mandamus was improper stating:

> The writ of mandamus to a public officer to compel the performance of a duty which rests in contract, merely, is in the nature of an action in equity for specific performance of such contract, and specific performance cannot be compelled of a contract of the nature of that here in question.
>
> . . . .
>
> ... It is true that relator does not seek by this proceeding to compel the specific performance of the contract. Its action, however, is one to compel the performance of the execution of the contract. Inasmuch as the city had the power to abandon the undertaking with relator, and has seen fit to exercise such

power, no right to enforce the execution of the contract exists.

*Id.* at 104.

Likewise, Richmond attempts to compel the execution of a contract that is not capable of performance. Therefore, we hold that the Authority was not required to complete any purely ministerial acts and that Richmond's mandamus action is not an appropriate remedy under these facts.

In the alternative, Richmond argues that the Authority's refusal to comply with all requirements under section 60.408 was a clear abuse of discretion. Again, based on the plain language of the statute, we disagree. The statute enumerates certain requirements which must be satisfied before the Authority can enter a binding contract. Accordingly, we find that the trial court did not err in denying the writ of mandamus, and we overrule Richmond's final point of error.

1. (f) The contract must be in writing, executed for the district or port authority by its executive or designated officer, and filed with proper officer of the district or port authority.
(g) Before a contract takes effect or is binding on a district or port authority, the appropriate financial officer of the district or port authority must certify that funds are or will be available to meet the contract when due.
(h) A requisition or purchase order must be issued in duplicate with one copy delivered to the contractor and one copy remaining in file with the district or port authority.