Office of the Attorney General · State of Texas

JOHN CORNYN

December 15, 2000

Mr. Jim Muse                                    Opinion No. JC-0316
Executive Director
General Services Commission                     Re: Whether "reverse auctions" constitute a
1711 San Jacinto Street                         permissible method of competitive bidding by
Austin, Texas 78711-3047                        state agencies  (RQ-0257-JC)

Dear Mr. Muse:

You have asked this office whether the General Services Commission ("GSC"), in a pilot procurement program using electronic commerce technology instituted pursuant to chapter 2177 of the Government Code, may conduct competitive bidding by means of a procedure called a "reverse auction." We conclude that, because the so-called "reverse auction" is as you put it "an electronic process in which pricing is shared among the participants,"[1] it does not constitute a sealed bid method and is not permissible under current Texas law. Specific statutory authorization would be required before GSC could participate in such a process.

As you explain the basis of your question, "GSC has recently been given authority to conduct a pilot procurement program, using electronic commerce technology. . . . One of the optional components that electronic purchasing systems offer is a process known as 'reverse auctions.'" Request Letter, *supra* note 1, at 2.

As you point out, "reverse auctions" are not defined in Texas law. Indeed, our research has revealed no case law in the United States regarding them, nor have we been referred to any. Nevertheless, as we understand it, the reverse auction procedure is fairly simple. Vendors are pre-qualified to participate in the event, and then "are awarded a contract, in which [they] agree to the reverse auctioning process and procedures." *See id.* After the vendors are trained in using an on-line bid system, the auction is held on a secured web site to which only the vendors, GSC, and the company staging the event have access. *See id.* at 3. Vendors bid against each other, sending the price for the goods or services down rather than up (hence the phrase "reverse auction") until a set time. At the expiration of the auction, "[t]he offeror of the last bid (lowest) amount would be eligible to receive an award or purchase order, if otherwise determined to be responsible and in compliance with specifications." *Id.*

---

[1]Letter from Jim Muse, Executive Director, General Services Commission, to Honorable John Cornyn, Texas Attorney General at 3 (July 10, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

Your concern is that the auction process requires the sharing of pricing information among the competing vendors. Any vendor's behavior in the auction depends upon its possession of some information concerning its competitor's bids. As we understand it, at a minimum a vendor must know that one of its competitors has offered a lower bid before it will bid again. Such an auction is markedly different, then, from the sealed bid method which generally characterizes competitive bidding.

As you note, the statute authorizing GSC to conduct the pilot procurement program states that "[t]he requirements of this section . . . are in addition to the requirements of other law relating to the solicitation of bids, proposals, or expressions of interest for a procurement by the commission or another state agency. This section . . . [does] not affect any other law that requires the commission or another state agency to award a procurement through competitive bidding, competitive sealed proposals, or another method." TEX. GOV'T CODE ANN. § 2177.002(h) (Vernon 2000). Moreover, GSC is directed, with regard to a variety of electronic methods of submitting bids which cannot be "sealed" in a physical sense, to "adopt rules to ensure the identification, security, and confidentiality" of such bids. *Id.* § 2156.005(b).

A brief submitted on behalf of a commercial enterprise which organizes "reverse auctions" argues that because each bidder in the auction is awarded a contract in which it agrees to be bound by the results of the auction, "[t]he contracts are actually awarded at the end of the first of the two steps using a multiple contract award model. The second step–the reverse auction–merely *allows* the contract holders to lower their price after they have a signed contract in hand to get orders under the contract."[2] Accordingly, the brief argues that the auction may be regarded as a "multiple award contract procedure," a method of procurement permitted under section 2155.062 of the Government Code.

As the brief notes, the term "multiple award contract" is not defined in the Government Code. Nor has our research disclosed any definition for the term in Texas case law. The General Services Commission, by rule, defines the multiple award contract procedure as "[a] purchasing procedure by which the commission establishes one or more levels of quality and performance and makes more than one award *at each level.*" 1 TEX. ADMIN. CODE § 113.2(24) (2000) (emphasis added). Particularly in light of that rule, the construction the brief offers appears a strained one. The ultimate contract for goods or services would not, after all, be awarded to every participant in the auction, but solely to the lowest bidder, assuming such bidder would have met all other necessary qualifications.

The brief further argues that the "reverse auction" procedure ensures the identification, security, and confidentiality of electronic bids. In particular, it asserts that "[c]onfidentiality is maintained as to the source of each online bid–the real time system does not identify bidders to their competitors, only the amount of the lowering prices." Akin, Gump Brief, *supra* note 2, at 6.

---

[2]Brief from Nanette K. Beaird, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Attorneys at Law, to Honorable John Cornyn, Texas Attorney General at 2-3 (Aug. 23, 2000) (on file with Opinion Committee) [hereinafter Akin, Gump Brief].

However, this argument fails to note that the statutory language does not require GSC to ensure the confidentiality of the bidder, but the confidentiality of the bid. *See* TEX. GOV'T CODE ANN. § 2156.005(b) (Vernon 2000). To the extent that participants have information of any sort regarding other bids, those bids cannot be said to be confidential; and absent some amount of such knowledge, as we have noted before, the auction cannot proceed.

In our view, the situation presented by this request is analogous to that presented by Attorney General Opinion MW-440. In that case, one of your predecessors asked this office whether GSC might "employ the competitive sealed proposal method as an alternative to competitive sealed bidding." Tex. Att'y Gen. Op. No. MW-440 (1982 ) at 1. We replied in the negative, finding that this proposal "closely resemble[d] the suggested statutory provisions" of the Model Procurement Code, and noting that "[t]he suggested code has not been adopted by the Texas Legislature . . . ." *Id.* at 3. We relied upon the case of *Niles v. Harris County Fresh Water Supply Dist. No. 1A*, 336 S.W.2d 637 (Tex. Civ. App.–Waco 1960, writ ref'd), which held that "compliance with [the competitive bidding statute] is mandatory." *Niles*, 336 S.W.2d. at 638; Tex. Att'y Gen. Op. No. MW-440 (1982) at 3-4. The Texas Legislature, persuaded of the value of the competitive sealed proposal method, thereafter specifically amended the state's procurement laws to allow for it. *See* TEX. GOV'T CODE ANN. §§ 2156.121-.127 (Vernon 2000) (chapter 2156, subchapter C).

Competitive bidding statues are, as we have noted, mandatory. *See Niles*, 336 S.W.2d at 638; *accord Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Moreover, "[w]hen a governmental entity enters into a contract that violates or fails to conform with the Constitution or a statute of the state, the governmental entity is not liable in contract." *Richmond Printing*, 996 S.W.2d at 224. Therefore, if we are correct that the so-called "reverse auction" procedure does not fall within the definition of competitive bidding, a contract resulting from such a procedure would be invalid. *See id.* Consequently, should you decide that engaging in such a purchasing method would be advantageous for the State of Texas, we believe GSC should seek specific statutory authority to do so from the Texas Legislature.

## S U M M A R Y

So-called "reverse auctions" do not constitute competitive bidding for the purposes of chapters 2155, 2156, and 2157 of the Government Code.  The General Services Commission may not purchase goods and services through "reverse auctions" without specific statutory authority to do so.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee