ACCEPTED
05-14-01515-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
2/16/2015 4:01:51 PM
LISA MATZ
CLERK

## NO. 05-14-01515-CV

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
2/17/2015 8:48:00 AM
LISA MATZ
Clerk

TXU Energy Retail Company L.L.C.

*Appellant*

v.

Fort Bend Independent School District

*Appellee*.

*On Appeal from the 116th District Court of Dallas County, Texas
Trial Court Cause No. DC-13-14961, the Honorable Tonya Parker Presiding*

## REPLY BRIEF FOR APPELLANT

**Michael K. Hurst**
  mhurst@ghjhlaw.com
  State Bar No. 10316310
**A. Shonn Brown**
  sbrown@ghjhlaw.com
  State Bar No. 24007164
**John Franklin Guild**
  jguild@ghjhlaw.com
  State Bar No. 24041022
**Gruber Hurst Johansen Hail Shank LLP**
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone No. (214) 855-6800
Facsimile No. (214) 855-6808

*ATTORNEYS FOR APPELLANT*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... ii

INDEX OF AUTHORITIES .............................................................................. iii

ARGUMENT .......................................................................................................1

    A.    Fort Bend Continues To Ignore The Fact That The Blend And
        Extend Provision Was Itself Competitively Bid. ....................................... 2

    B.    Fort Bend's Waiver Of Immunity Could Not Be More Explicit. .......... 9

        1.  TXU Did Not Waive Its Argument Based On The Express
             Representations And Warranties Contained In The Original
             2010 Agreement. ..........................................................................12

        2.  Fort Bend's Arguments On The Merits Of TXU's Claim are
             Not Responsive To The Jurisdictional Question; But Even If
             The Court Were To Consider The Merits Of TXU'S Claim,
             Reversal Is Required. ...................................................................14

        3.  TXU's Claims Based On The Express Terms Of The Original
             2010 Agreement Are Not "Quasi-Contractual."............................17

    C.    The Texas Supreme Court Has Not Completely Foreclosed The
        Possibility Of Waiver Of Governmental Immunity By Conduct,
        And This Court Has Never Directly Addressed A Situation As
        Extreme As The Facts Presented Here. ..................................................... 18

    D.    TXU Preserved Its Promissory Estoppel Claim Through Its
        Argument Relating to Waiver By Conduct. ............................................. 20

PRAYER.............................................................................................................22

CERTIFICATE OF COMPLIANCE WITH RULE 9.4....................................22

CERTIFICATE OF SERVICE .........................................................................23

# INDEX OF AUTHORITIES

## Cases

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000) ........................ 5, 7, 14

*City of Denton v. Mun. Admin. Servcs*, 59 S.W.3d 764 (Tex. App.—
Fort Worth 2001, no pet. h) .................................................................................8

*City of Freeport v. Briarwood Holdings, L.L.C.*, No. 01- 11-01108-CV,
2013 WL 1136576 (Tex. App.—Houston [1st Dist.] Mar. 19,
2013, no pet.) ......................................................................................................18

*Daniels Building & Constr. v. Silsbee Indep. Sch. Dist.*, 990 S.W.2d 947
(Tex. App.—Beaumont 1999, pet. dism'd)........................................................8

*Dugan v. Compass Bank*, 129 S.W.3d 579 (Tex. App.—Dallas 2003, no pet.)......13

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59
(Tex. 2014) (emphasis added) ..........................................................................10

*GADV, Inc. v. Beaumont Indep. Sch. Dist.*, Civil Act. No. 1:11-CV-187,
2011 U.S. Dist. 60983 (E.D. Tex. 2011) .............................................................8

*Gentilello v. Univ. of Texas Sw. Health Sys.*, 05-13-00149-CV, 2014
WL 1225160 (Tex. App.—Dallas Mar. 24, 2014), review denied
(Oct. 3, 2014)............................................................................... 18, 19, 20

*Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905 (Tex. 2007) .....................11

*In re Hays Cnty. Sheriff's Dep't*, No. 03-12-00343-CV, 2012 WL 6554815
(Tex. App.—Austin Dec. 12, 2012) (orig. proceeding) (mem. op.)
(Pemberton J., concurring) ................................................................................18

*Kaufman County v. Combs*, 393 S.W.3d 336 (Tex. App.—Dallas 2012,
pet. denied) .........................................................................................................19

*La Marque Indep. Sch. Dist. v. Healthy Res. Enterp., Inc.*, 357 S.W.3d 761
(Tex. App.—Houston [14th Dist.] 2011, no pet. h) ............................................5

*Mitsuba Texas, Inc. v. Brownsville Indep. Sch. Dist.*, Cause No. 05-97-01271-CV, 2000 WL 122348 (Tex. App.—Dallas 2000, no pet. h)............................................8

*Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220 (Tex. App.—Houston [14th Dist.] 1999, no pet. h)............................................7, 10

*Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910 (Tex. 1997) ...............................14

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011) ...................................................................... 18, 19

*Texas S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ...........................................19

*United States v. Walker*, Civ. Act. No. 1:11-CR-67, 2011 WL 6181468 (E.D. Tex. 2011) ..............................................................................................7

*Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.) ....................................................................................................17

### Statutes

TEX. EDUC. CODE ANN § 44.0351(c) ......................................................................3

TEX. EDUC. CODE ANN § 44.0352 ...........................................................................3

TEX. EDUC. CODE ANN. § 44.031(b)(9)....................................................................3

TEX. R. APP. P. 33.1(a)(1) .......................................................................................13

iv

## ARGUMENT

Rather than attempting to explain why governmental immunity should bar TXU's claims for $3,169,046.38 resulting from Fort Bend's choice to disregard its contractual obligations under the undisputed facts and circumstances in *this case*, Fort Bend simply ignores the case-specific facts at hand and focuses on broad generalizations. The facts at hand are: (1) Fort Bend competitively procured an electricity contract through a request for proposal that expressly requested blend and extend availability and received multiple competing bids proposing blend and extend availability, meaning that the competitive bidding statute was satisfied; and (2) even if the 2011 Contract Extension implementing the blend and extend provision in the original 2010 Agreement were void (it is not), Fort Bend unambiguously assumed liability for damages caused to TXU by Fort Bend's avoidance of the 2011 Contract Extension and expressly waived governmental immunity in a written contract that everyone agrees was competitively bid, *i.e.* the original 2010 Agreement.

Notably, Fort Bend does not directly address either of these facts in the body of its brief, instead relegating both issues to non-substantive footnotes. Fort Bend spends the majority of its brief discussing general standards that are not contested and cases involving contracts that did not involve any competitive bidding process.

1

Fort Bend's avoidance of the contested issues on appeal is telling—it has no substantive response.

**A.  Fort Bend Continues To Ignore The Fact That The Blend And Extend Provision Was Itself Competitively Bid.**

Fort Bend's request for governmental immunity relies entirely on its argument that the 2011 Contract Extension is void. According to Fort Bend, the 2011 Contract Extension is void because it was not subject to a second separate and independent competitive bidding process following the competitive bidding process resulting in the original 2010 Agreement. Appellee's Br. at 14-19. But nowhere does Fort Bend cite authority for its argument that the 2010 competitive bidding process was insufficient under the facts in this case.

It is undisputed that in May 2010, Fort Bend issued a request for qualifications seeking competitive bids for the supply of electricity. (Appx. 2(A-2), CR 391-410) Fort Bend stated "each company will be evaluated on the following criteria…Blend and extend availability…." (Appx. 2(A-2) at 6, CR 396) TXU, like all the other top bidders, included a sample blend and extend provision in its proposal, as requested by Fort Bend. (Appx. 2(A) ¶ 5, CR 364; RR 58:24-59:17; Appx. 2(A-2) at 6, CR 396; Appx. 2(A-4), CR 412) The 2011 Contract Extension was simply the implementation of the parties' intent when they included blend and extend availability in the original 2010 Agreement, which was exercised

2

during the period set forth in the request for qualification. (Appx. 2(A) ¶ 9, CR 364; Appx. 2(A-5), CR 413)

In an effort to avoid discussing the undisputed fact that the blend and extend provision was competitively bid, Fort Bend falsely suggests that it is TXU that seeks to ignore the factors Fort Bend disclosed to potential competitors. Appellee's Br. at 18. But only Fort Bend ignores its explicit request for "blend and extend availability" in its request for qualifications. Indeed, rather than addressing the issue, Fort Bend boldly, and without citation to any authority, claims in a footnote that "[i]t is immaterial that the District requested blend and extend availability" in its request for qualifications. Appellee's Br. at 19, n.8; (Appx. 2(A-2) at 6, CR 396)

This simply cannot be so. As Fort Bend itself asserts, the specifications published by Fort Bend, including the specification for blend and extend availability, provided a list "that interested bidders can tailor their bids to." Appellee's Br. at 18. Not only did Fort Bend give everyone an equal footing to compete for a blended and extended duration beyond the original term, but once it did, Fort Bend was required by the Texas Education Code to consider the availability of a blend and extend provision in ranking the proposals. *See* TEX. EDUC. CODE ANN. § 44.031(b)(9) ("district shall consider: …(9) any other relevant factors specifically listed in the request for bids or proposals."); *see also id*. §

3

44.0351(c) (directing school districts to consider other factors in selection criteria beyond pricing when using a competitive bid); § 44.0352 (directing school districts to consider other factors in the selection criteria beyond pricing when using competitive sealed proposals).

Fort Bend's unbelievable claim that TXU's competitors were unaware that the 2010 competitive bidding process might result in a contract with blend and extend availability is entirely unsupported by the record. *See* Appellee's Br. at 18-19. Not only did TXU offer blend and extend availability during the bidding process, as directed by Fort Bend, but so did the second and third rated bidders. (*See* RR 58:24-59:17; Appx. 2(A-2) at 6, CR 396; Appx. 2(A-4), CR 412 (noting that "[t]he top three [bidders] provided adequate provision per the district RFQ….") It is undisputed that there was in fact competition for the contract, including for a blended and extended term. The first time anyone disputed the validity of the competitively bid blend and extend provision was after energy prices dropped and Fort Bend decided to shop for a better deal. (*See* Appx. 2(A) at ¶ 23, CR 367).

Indeed, the only record citation to support Fort Bend's claim that other bidders were misled by Fort Bend's request for qualification is to the self-serving hearsay statement of one of Fort Bend's employees that some unidentified competitors asked in 2012 when the next competitive bidding period for electricity

4

would begin.[1] *See id.* At best, Fort Bend's proffered evidence suggests that competitors were inquiring as to whether Fort Bend had exercised the blend and extend provision it requested of all bidders in 2010. Not only does the evidence not support the inference that Fort Bend attributes to it, but at least two of those very same competitors had themselves proposed blend and extend provisions, meaning that there is at least fact question precluding the grant of summary judgment and Fort Bend's plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) ("If a fact issue exists, the Court should deny the plea."); *La Marque Indep. Sch. Dist. v. Healthy Res. Enterp., Inc.*, 357 S.W.3d 761, 763 (Tex. App.—Houston [14th Dist.] 2011, no pet. h).

Fort Bend also mischaracterizes TXU's theory of this case by suggesting that TXU has argued that any contract may be extended for any period of time after it is originally awarded, a characterization that is premised on Fort Bend's assertion that the criteria it listed in the request for qualification is immaterial. *See* Appellee's Br. at 19 ("The upshot of TXU's argument is that once a school district competitively bids a contract, the parties are free to 'blend and extend' the contract in perpetuity without ever engaging in further competitive bidding.") and n.8 ("It is

---

[1] Fort Bend falsely asserts that "[t]he evidence is undisputed that … TXU's competitors believed that they would be able to compete to provide FBISD's electricity services after the expiration of the two year period." Appellee's Br. at 18-19. This assertion by Fort Bend is in fact disputed, and as discussed above, the evidence cited by Fort Bend does not even begin to support the premise, let alone conclusively establish the fact asserted.

immaterial that the District requested blend and extend availability" in the request for qualification during competitive bidding.). TXU has never made such an extreme argument.

Instead, TXU's argument is much narrower. The question is whether the 2010 competitive bidding process, which expressly stated that blend and extend availability was requested, put all bidders on notice that the contract that would be awarded might contain a blend and extend provision. Because it did provide such notice, all potential competitors were on the same footing to offer Fort Bend the flexibility it desired. Blend and extend was exercised during the term of the contract specifically contemplated by the request for qualification. There is no suggestion that anyone believes that such a contract could be blended in "perpetuity."

And there is no dispute that the bidders and Fort Bend understood what "blend and extend" would mean in the context of an agreement to supply electricity. The term "blend and extend" was so commonly understood in the electricity industry that Fort Bend knew to request "[b]lend and extend arability" in its request for qualification, and all the top bidders were able to offer such availability based solely on the four words "[b]lend and extend availability" in the request for qualifications. (Appx. 2(A-2) at p.6, CR 192; RR 58:24-59:17; Appx. 2(A-2) at 6, CR 396; Appx. 2(A-4), CR 412)

To avoid addressing the undisputed facts discussed above, Fort Bend misrepresents TXU's position in a second way by asserting that the issue raised by TXU is whether the 2011 Contract Extension is technically a distinct contract from the original 2010 Agreement for any purpose, and then responding to that argument. *See* Appellee's Br. at 14-17. But the question is not whether the 2011 Contract Extension is a distinct contract for any purpose; the relevant question is whether the 2010 competitive bidding process provided competitors notice and opportunity to bid for the blended and extended term. It is undisputed not only that competitors had such notice, but that the top competitors directly competed on the blend and extend provision itself.

The cases cited by Fort Bend are off-point, distinguishable, and in many instances help TXU. While they address the validity of "entering into" an original contract awarded to a bidder, they provide no guidance for "extending" a contract that was competitively bid with public notice of the potential for extension. Many of Fort Bend's cases concern contracts that are void *ab initio* because they were never competitively bid. *See Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 222 (Tex. App.—Houston [14th Dist.] 1999, no pet. h) (never a written contract and the Port Authority notified vendor of deficiency immediately after receiving the good and services); *United States v. Walker*, Civ. Act. No. 1:11-CR-67, 2011 WL 6181468, at *3-*4 (E.D. Tex. 2011) (contractor may have claim

for work performed in violation of competitive bidding statute and accepted by school district)); *Mitsuba Texas, Inc. v. Brownsville Indep. Sch. Dist.*, Cause No. 05-97-01271-CV, 2000 WL 122348, at *4-*5 (Tex. App.—Dallas 2000, no pet. h) (affirming summary judgment on breach of contract claim where there was no contract approved by board of trustees or competitive bidding but reversing as to quantum meruit and promissory estoppel claims because "A void contract can be enforceable with a school district as an implied contract for the reasonable value of the benefits received"); *City of Denton v. Mun. Admin. Servcs*, 59 S.W.3d 764, 772 (Tex. App.—Fort Worth 2001, no pet. h) (reversing and remanded for trial on implied contract/quantum meruit despite holding that contract was void for containing an illegal contingency fee arrangement between a City and an auditor).

Fort Bend's other cases address a contract that is void because the competitive bidding process leading to the execution of the contract was not followed. *See Daniels Building & Constr. v. Silsbee Indep. Sch. Dist.*, 990 S.W.2d 947, 949 (Tex. App.—Beaumont 1999, pet. dism'd) (contract void ab initio because ISD did not follow requirement for publishing the deadline to submit a sealed bid); *GADV, Inc. v. Beaumont Indep. Sch. Dist.*, Civil Act. No. 1:11-CV-187, 2011 U.S. Dist. 60983 at * 15 (E.D. Tex. 2011) (non-chosen bidder could enjoin work project where district did not follow competitive bidding in awarding a contract to another bidder that was void *ab initio*, and the selected vendor could

8

sue the district for the value of work performed). None of the cases cited by Fort Bend is instructive on the discreet issue of whether the parties to a competitively bid contract can exercise a competitively bid provision for extension.

Fort Bend's unwillingness to address the specific issues raised in this appeal is telling. While the issue is novel,[2] there is nothing in the competitive bidding statute or any of the authorities cited by Fort Bend that supports its position that a competitively-bid, industry-standard, blend and extend provision violates either the language or the spirit of the Texas Education Code. For that reason, the court should be reversed and this case should be remanded with instructions that Fort Bend is not entitled to sovereign immunity.

## B. Fort Bend's Waiver Of Immunity Could Not Be More Explicit.

Even if the 2011 Contract Extension were void, the trial court should be reversed and TXU should be permitted to pursue its claims because Fort Bend waived governmental immunity and agreed to be liable for damages caused by the avoidance of the 2011 Contract Extension in the original 2010 Agreement, which everyone agrees is a valid and enforceable contract that continued to apply and formed "an integral part of the Agreement" after blended and extended. (*See* Appx. 2(A-8) at Sec. V, CR 423).

---

[2] TXU concedes there is no authority directly considering the validity of a contract term that allows for extension when the original bidding process expressly discloses the district's desire for such flexibility.

9

The original Agreement, which was executed in 2010, contained the blend and extend provision sought in Fort Bend's request for qualifications and included in TXU's proposal. (Appx. 2(A-1) at Trans. Conf. § IV, CR 381) The Original 2010 Agreement also contained representations and warranties that Fort Bend was authorized to enter into the Agreement, and that the Agreement was a "valid and binding obligation of [Fort Bend], enforceable against it in accordance with its terms." (Appx. 2(A-1) at Base Contract § 12.9, CR 373) Fort Bend represented to TXU that it "is authorized by statute or the constitution to enter into each Agreement …." (Appx. 2(A-1) at Addendum § XII, CR 377) Fort Bend also agreed that if it "uses its inherent powers as a governmental entity … to circumvent the intent or terms and provisions of the Agreement, [Fort Bend] shall be responsible for the contract damages caused by such action." (Appx. 2(A-1) at Addendum § VII, CR 376)

As a result, Fort Bend's reliance on *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220 (Tex. App.—Houston [14th Dist.] 1999, no pet.) and other cases holding that someone contracting with a school district has an independent responsibility to ensure compliance with competitive bidding laws is misplaced. "Freedom of contract allows parties to bargain for mutually agreeable terms and *allocate risks as they see fit*." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 65 (Tex. 2014) (emphasis added) (quoting *Gym-N-I Playgrounds,*

10

*Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007)). Fort Bend unequivocally assumed any risk that the implementation of the blend and extend provision would later be found to be invalid and agreed to pay TXU any resulting damages. (Appx. 2(A-1) at Addendum § VII, CR 376) And Fort Bend's own legal counsel concluded that the blend and extend provision and the 2011 Contract Extension were valid. (*See, e.g.,* Appx. 2(A-5), CR 413)

Notably, Fort Bend appears to concede that the Original 2010 Agreement was a valid and enforceable agreement that satisfied the requirements of Section 44.031 of the Texas Education Code, and thus, satisfied the Legislature's waiver of governmental immunity under Section 271.152 of the Texas Local Government Code. *See, e.g.,* Appellee's Brief at 13 ("Because the *2011 contract* is void…."), Appellee's Brief at 14-16 (arguing that the 2011 agreement is invalid because, according to Fort Bend, it is a separate agreement from the 2010 agreement). In a footnote, Fort Bend claims that TXU waived this argument. Appellee's Br. at 19, n.9. Fort Bend also asserts that it did not breach the original 2010 Agreement and TXU did not suffer any damages as the result of Fort Bend's breach. *Id.* Finally, Fort Bend suggests that enforcing the express terms of the 2010 Agreement somehow results in "quasi-contractual liability on the District," despite the fact that such claims are premised on the express terms of the 2010 Agreement. *Id.* All these arguments lack any merit.

11

**1.      TXU Did Not Waive Its Argument Based On The Express Representations And Warranties Contained In The Original 2010 Agreement.**

Fort Bend's first response to the undeniable conclusion that it waived governmental immunity and is liable to TXU pursuant to the original 2010 Agreement is to argue that the issue was waived.  Appellee's Br. at 19, n.9.  But the issue was directly presented to the trial court.

In TXU's response to the plea to jurisdiction, which was incorporated into its response to the motion for summary judgment, TXU argued:

- "The Supply of Electricity Contract [citing to the original 2010 Agreement] contained representations and warranties that [Fort Bend] was authorized to enter into it, and that it is a 'valid and binding obligation of [Fort Bend], enforceable against it in accordance with its terms.'" (Appx. 2 at 6, CR 337)

- "As part of the Supply of Electricity Contract [citing to the original 2010 Agreement], [Fort Bend] represented in writing that it 'is authorized by statute or the constitution to enter into each Agreement . . .'" *Id.*

- "[Fort Bend] represented and warranted to that it was authorized to enter into the Supply of Electricity Contract, and that 'each Agreement is a valid and binding obligation of [Fort Bend],

enforceable against it in accordance with its terms.' [citing to the original 2010 Agreement] … It also represented and warranted that it 'is authorized by statute or the constitution enter into each Agreement . . . .'… Finally, the parties agreed that [Fort Bend] could not use the competitive bidding laws as a sword to 'circumvent the intent or terms and provisions of the Agreement[.]'" *Id.* at 18, CR 349.

Thus, the issue was presented to the trial court and may be properly considered on the merits by this Court. *See* TEX. R. APP. P. 33.1(a)(1) (noting that a party need only state the grounds for the ruling "with sufficient specificity to make the trial court aware of the complaint"); *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.) (holding that issue was preserved where "trial court had an opportunity to consider and rule on Appellants' claim, and the appellee has had the opportunity to oppose Appellants' request").

Indeed, there is very little else to say about the claim as Fort Bend appears to agree that the original 2010 Agreement is a valid and enforceable agreement, which is all is necessary to invoke the trial court's jurisdiction. *See, e.g.,* Appellee's Brief at 13 ("Because the *2011 contract* is void…."), Appellee's Brief at 14-16 (arguing that the 2011 agreement is invalid because, according to Fort Bend, it is a separate agreement from the 2010 agreement). The remainder of Fort

Bend's arguments goes to the merits and does not raise a jurisdictional issue, as discussed below.

> **2.**     **Fort Bend's Arguments On The Merits Of TXU's Claim are Not Responsive To The Jurisdictional Question; But Even If The Court Were To Consider The Merits Of TXU'S Claim, Reversal Is Required.**

Fort Bend also argues the original 2010 Agreement was fully performed and that TXU suffered no damages from Fort Bend's alleged breach. Appellee's Br. at 19, n.9. But these arguments go only to the merits and were not addressed by Fort Bend's Plea to the Jurisdiction or Motion for Summary Judgment. Thus, reversal of the partial summary judgment and grant of the plea to the jurisdiction for a determination of the merits is required.[3] *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case."); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) ("A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone.").

---

[3] Alternatively, if the issue was not presented by TXU such that it can be considered by this Court, then it also could not have been the subject of the trial court's partial summary judgment and grant of the plea to the jurisdiction and is currently at issue in the claim presented in TXU's Second Amended Petition. (CR at 531, 538), s*ee also* Appellee's Br. at 19, n.9.

But even if the Court were to reach those issues, reversal would clearly be required because there is no dispute that Fort Bend breached is representations and warranties to TXU in the original 2010 Agreement, and there is no dispute that TXU suffered damages as a result.

The Original 2010 Agreement contained representations and warranties that Fort Bend was authorized to enter into the Agreement (including the blend and extend provision), and that the Agreement (including the blend and extend provision) was a "valid and binding obligation of [Fort Bend], enforceable against it in accordance with its terms." (Appx. 2(A-1) at Base Contract § 12.9, CR 373) Fort Bend represented to TXU that it "is authorized by statute or the constitution to enter into each Agreement," including the blend and extend provision. (Appx. 2(A-1) at Addendum § XII, CR 377) Fort Bend also agreed that if it "uses its inherent powers as a governmental entity … to circumvent the intent or terms and provisions of the Agreement [including the blend and extend provision], [Fort Bend] shall be responsible for the contract damages caused by such action." (Appx. 2(A-1) at Addendum § VII, CR 376) Moreover, it is undisputed that the parties' intent was that Fort Bend would have the ability to exercise the blend and extend provision in the original 2010 Agreement, and that the 2011 Contract Extension was the implementation of the parties' intent. (Appx. 2(A) ¶ 9, CR 364; Appx. 2(A-5), CR 413) Thus, by invoking governmental immunity and seeking to

15

avoid the 2011 Contract Extension, Fort Bend breached its warranty in the original 2010 Agreement.

TXU suffered substantial out of pocket damages as a result of Fort Bend's Breach. As a result of the 2011 Contract Extension, TXU purchased electricity from the marketplace necessary to satisfy the term of the Agreement as blended and extended. (Appx. 2(A) ¶ 18, CR 366) TXU then performed its obligations under the Agreement as blended and extended, including providing Fort Bend electricity at the low fixed rate stated in the Contract Extension rather than the higher standard list price that Fort Bend would otherwise be obligated to pay TXU starting on May 31, 2012 under the original Agreement. (*See* Appx. 2(A) ¶¶ 19-20, CR 366; Appx. 2(A-1) Base Contract § 4.3, CR 369) TXU also provided Fort Bend the benefit of funds from its own proprietary program focused on implementing sustainable solutions covering the entire term of the Agreement as blended and extended. (CR 539 at ¶ 29)

The out of pocket damages to TXU resulting from Fort Bend's breach of the Agreement were $3,169,046.38, which includes the out of pocket losses resulting from having purchased electricity to perform the entire contract and cash paid directly to Fort Bend under a rebate program premised on Fort Bend's performance of the entire term of the Agreement, as blended and extended. (*See* CR 530-31; Appx. 2(A) ¶¶ 18-20, CR 366; Appx. 2(A-11), CR 437-438) Fort Bend has not

even attempted to argue, let alone explain, how these damages are not the direct result of Fort Bend's breach.

### 3. TXU's Claims Based On The Express Terms Of The Original 2010 Agreement Are Not "Quasi-Contractual."

Finally, Fort Bend makes the assertion that enforcement of the express terms of a written contract would "impose quasi-contractual liability." No explanation is given for this baseless argument, which literally asserts that claim for breach of the express terms of an actual, written, and enforceable contract somehow is something other than a true contract claim. To be clear, this Court has already drawn the line between contract claims and quasi-contract claims, and TXU's claim for breach contract clearly is a true contract claim because it is premised on the language of a written and executed instrument, not some implied theory of law. *See Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) ("A contract implied in law, or a quasi-contract, is distinguishable from a true contract because a quasi-contract is a legal fiction, an obligation imposed by law regardless of any actual agreement between the parties.").

Because TXU's claim is premised on an actual, written contract that the parties do not dispute was competitively bid, it is not a quasi-contractual claim.

**C.** **The Texas Supreme Court Has Not Completely Foreclosed The Possibility Of Waiver Of Governmental Immunity By Conduct, And This Court Has Never Directly Addressed A Situation As Extreme As The Facts Presented Here.**

Fort Bend asserts that the Texas Supreme Court and this Court have held that a governmental entity cannot waive governmental immunity by conduct regardless of how egregious or extreme its conduct has been, citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) and an unpublished memorandum opinion of this Court, *Gentilello v. Univ. of Texas Sw. Health Sys.*, 05-13-00149-CV, 2014 WL 1225160, at *3 (Tex. App.—Dallas Mar. 24, 2014), review denied (Oct. 3, 2014). Appellee's Br. at 20-21.

To begin, other courts of appeals have suggested that *Sharyland* did not definitively reject waiver-by-conduct under all circumstances. *See City of Freeport v. Briarwood Holdings, L.L.C.*, No. 01- 11-01108-CV, 2013 WL 1136576 at *3-*4 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.) (mem. op.) (noting that the Court would not address the waiver by conduct theory because the governmental entity claiming immunity was not the same entity that had assured the plaintiff that the contract would be valid and enforceable); *In re Hays Cnty. Sheriff's Dep't*, No. 03-12-00343-CV, 2012 WL 6554815 (Tex. App.—Austin Dec. 12, 2012) (orig. proceeding) (mem. op.) (Pemberton J., concurring) ("it remains that the supreme court, even while questioning the waiver-by-conduct concept, has nonetheless continued to hold open the possibility raised in Federal

Sign that some set of facts not yet seen could constitute governmental conduct that the high court deems to waive immunity."). Even after *Sharyland* was decided, this Court continued to hold that "there may be rare situations involving 'extraordinary factual circumstances' where courts might recognize a waiver of immunity by conduct…." *Kaufman County v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied).

Moreover, this Court's unpublished opinion in *Gentilello* is distinguishable because UT Southwestern, a state entity, expressly reserved its defense of sovereign immunity in the settlement that was the subject of the lawsuit. *Gentilello*, 2014 WL 1225160, at *3. This Court rejected the plaintiff's waiver argument because "we conclude the language in the settlement agreement is not a clear and unambiguous waiver of sovereign immunity in this case…." *Id.* That is in direct contrast to the facts of this case and the authority cited by TXU.

Instead, like the governmental entity in *Texas S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 908 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), Fort Bend waived immunity through its conduct because it "lured [TXU into the original 2010 Agreement and 2011 Extension] with false promises that the contract would be valid and enforceable." The Original 2010 Agreement contained representations and warranties that Fort Bend was authorized to enter into the Agreement, and that the Agreement was a "valid and binding obligation of

[Fort Bend], enforceable against it in accordance with its terms." (Appx. 2(A-1) at Base Contract § 12.9, CR 373) Fort Bend represented to TXU that it "is authorized by statute or the constitution to enter into each Agreement …." (Appx. 2(A-1) at Addendum § XII, CR 377) Fort Bend also agreed that if it "uses its inherent powers as a governmental entity … to circumvent the intent or terms and provisions of the Agreement, [Fort Bend] shall be responsible for the contract damages caused by such action." (Appx. 2(A-1) at Addendum § VII, CR 376) And Fort Bend told TXU that Fort Bend's own legal counsel concluded that the blend and extend provision and the 2011 Contract Extension were valid. (*See, e.g.,* Appx. 2(A-5), CR 413)

Nonetheless, this Court did state in *Gentilello* that "[w]e decline to establish a waiver-by-conduct exception to sovereign immunity for any cause of action, whether based on a breach of contract or not." *Gentilello*, 2014 WL 1225160, at *4. To the extent that this holding in *Gentilello* bars all theories of waiver of governmental immunity through conduct, the holding in *Gentilello* is in conflict with other courts of appeals in Texas and TXU wishes to preserve its argument for consideration *en banc* or through a petition for review to the Texas Supreme Court.

**D. TXU Preserved Its Promissory Estoppel Claim Through Its Argument Relating to Waiver By Conduct.**

Fort Bend also asserts that TXU waived reversal relating to TXU's promissory estoppel claim by failing to discuss the claim for promissory estoppel

20

separate and apart from its discussion of Fort Bend's waiver of governmental immunity by conduct. *See* Appellee's Br. at 21-22. However, TXU expressly asserted that "Fort Bend Waived Governmental Immunity by its Conduct in Accepting Performance of the Agreement and Expressly Representing and Warrantying the Agreement's Enforceability." TXU extensively briefed the representations made by Fort Bend relating to the enforceability of the Agreement and TXU's reliance thereon. *See* Appellant's Br. at 17-20. This is TXU's promissory estoppel claim, and the terminology used by TXU simply referred to the issue in the narrow context of a waiver of governmental immunity, which is all that is at issue in this appeal.

TXU agrees that its promissory estoppel claim rises or falls based on its waiver by conduct argument, as discussed above. But TXU's waiver by conduct argument should result in the reversal of the trial court's partial summary judgment and plea to the jurisdiction relating to TXU's claim for promissory estoppel, as fully brief by TXU in its Appellant's Brief at pages 17 to 20, and in this Reply.

## PRAYER

TXU respectfully prays that this Court reverse the trial court's order granting Fort Bend's Plea to the Jurisdiction and Motion for Summary Judgment, remand for further proceedings on TXU's claims, and for such other relief to which it may be entitled.

Respectfully submitted,

*John Franklin Guild*
**Michael K. Hurst**
  mhurst@ghjhlaw.com
  State Bar No. 10316310
**A. Shonn Brown**
  sbrown@ghjhlaw.com
  State Bar No. 24007164
**John Franklin Guild**
  jguild@ghjhlaw.com
  State Bar No. 24041022
**Gruber Hurst Johansen Hail Shank LLP**
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone No. (214) 855-6800
Facsimile No. (214) 855-6808

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

I, John Franklin Guild, attorney for Petitioners certify that this document was generated by a computer using Microsoft Word 2010 which indicates that the word count of this document is 5083 per TEX. R. APP. P. 9.4 (i).

*John Franklin Guild*
John Franklin Guild

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 16th day of February, 2015, a true and correct copy of the foregoing document has been sent by electronic service and by First Class Mail to the following counsel of record:

ROGERS, MORRIS & GROVER, L.L.P.
Richard A. Morris
  State Bar No. 14497750
Jonathan G. Brush
  State Bar No. 24045576
Stephanie E. Maher
  State Bar No. 24074637
5718 Westhaimer Rd.
Suite 1200
Houston, TX  77057
Telephone No. (713) 960-6037


*/s/ John Franklin Guild*
John Franklin Guild